**OFFICE MAX, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1:03CV961.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 13, 2004.

Stephan J. Schlegelmilch, Baker & Hostetler, Cleveland, OH, Henry D. Levine, Stephen J. Rosen, Levine, Blaszak, Block & Boothby, LLP, Washington, DC, for Plaintiff.

Alejandro L. Bertoldo, Washington, DC, for Defendant.

### Memorandum of Opinion and Order

GAUGHAN, District Judge.

### Introduction

This matter is before the Court upon (1) plaintiff OfficeMax, Inc.'s Motion for Summary Judgment (Doc. 15) and (2) defendant United States' Motion for Summary Judgment (Doc. 23). The issue presently before the Court is whether plaintiff OfficeMax is entitled to a refund of federal excise taxes remitted on certain long-distance telephone services. For the following reasons, the Court grants plaintiff's Motion for Summary Judgment and denies defendant's Motion for Summary Judgment.

### Facts

Plaintiff OfficeMax, Inc. filed a Complaint in this Court on May 21, 2003, alleging that it was entitled to a refund of federal excise taxes paid for the years 1999 through 2001 for certain long-distance telephone services provided to it by MCI WorldCom Communications and MCI Telecommunications Corp. (collectively "MCI"). Plaintiff thereafter filed a First Amended Complaint on September 9, 2003, raising the same allegations and adding a request for refund for taxes paid for the year 2002.

The facts as alleged in plaintiff's First Amended Complaint are as follows. During the quarter ending March 31, 1999 through the quarter ending December 31, 2002, plaintiff OfficeMax purchased intrastate, interstate, and international long-distance telephone services from MCI. (First Am. Complt. at ¶ 9).[1] Apparently

1. Plaintiff alleges that its purchase of these long-distance telephone services from MCI has been subject to different agreements over the years. Specifically, via the affidavit of John South (Divisional Information Technology Controller), plaintiff asserts that (1) from January 1999 through January 2000, it purchased interstate and international long distance voice service from MCI pursuant to Special Customer Arrangement ("SCA 1") between MCI and OfficeMax dated September 30, 1996 and applicable MCI tariffs; (2) from January 2000 through July 2001, it purchased such service from MCI pursuant to an SCA dated November 23, 1999 and December 3, 1999 ("SCA 2")and applicable MCI tariffs; and (3) from August 2001 through December 2002, it purchased such service from MCI pursuant to SCA 2 and the MCI Service Publication and Price Guide. (South Aff. at ¶¶ 4,5,6). With respect to intrastate long-distance voice services, plaintiff asserts that it purchased such services from MCI for certain states pursuant to intrastate tariffs, schedules, and price lists filed with the applicable state regulatory authorities, as modified by SCA 1 (for the period January 1999 through January 2000) and SCA 2 (for the period January 2000 through December 2002). (South Aff. at ¶¶ 7, 8). Copies of SCAs 1 and 2 and various MCI tariff, rate tables and price list information are attached as Exhibits to plaintiff's Motion for Summary Judgment.

believing that these services constituted taxable long distance service under the Internal Revenue Code, MCI collected federal excise taxes from OfficeMax in the amount of $380,296.72 and remitted the taxes to the Internal Revenue Service. (First Am. Complt. at ¶ 10).

On April 6, 2002, plaintiff OfficeMax filed claims for refund of $284,525.31, which plaintiff claims represents the aggregate amount of federal excise taxes paid by OfficeMax for the years 1999, 2000 and 2001 on the long-distance telephone services provided by MCI. (First Am. Complt. at ¶ 11). Thereafter, on February 13, 2003, plaintiff filed claims for refund of $95,771.41, which plaintiff claims represents the aggregate amount of federal excise taxes paid by OfficeMax for the year 2002 with respect to the long-distance telephone services provided by MCI. (First Am. Complt. at ¶ 13).[2]

Plaintiff bases its claims for these refunds on the assertion that, with the exception of certain calls made to and from Mexico and within the state of Missouri, MCI's charges for the long-distance telephone services it provided to OfficeMax were always based on the duration of each individual call, the type of access provided (dedicated or switched),[3] or the time of day in which the call was made. Plaintiff claims that distance was never a factor in determining the charges for these services. (First Am. Complt. at ¶ 19).

As such, plaintiff claims that these "non-distance sensitive services" do not constitute taxable long-distance services under Sections 4251 and 4252 of the Internal Revenue Code. (First Am. Complt. at ¶ 20). The Internal Revenue Service disagrees, and has refused to refund plaintiff OfficeMax's alleged overpayment.

The parties have filed cross Motions for Summary Judgment regarding the issue of whether the long-distance telephone service provided by MCI to plaintiff Office-Max constitutes "toll telephone service" as defined in §§ 4251 and 4252 of the Internal Revenue Code, thus rendering it taxable.[4] Defendant United States has requested oral argument. The Court finds that oral argument would not aid the Court in resolution of the parties' Motions.

### Standard of Review

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir.1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(c)). A fact is "material only if its resolution will affect the

---

**2.** Plaintiff attaches copies of its Form 8849 claims for refunds as Exhibits A and B to its First Amended Complaint.

**3.** Plaintiff explains that originating and terminating access for an interstate call "can be either 'switched,' i.e. per minute services or 'dedicated,' i.e., flat-rated services." (Plaintiff Motion for Summary Judgment at p. 4, fn. 9).

**4.** In connection with this briefing, plaintiff filed a "Motion for Leave to File Instanter a Surreply to the United States' Reply to Office-Max's Opposition to the United States' Motion for Summary Judgment." (Doc. 30). The Court grants this Motion.

outcome of the lawsuit." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.,* 53 F.3d 146, 150 (6th Cir.1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985). However, the nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox,* 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (1986)). Moreover,

if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted).

### *Discussion*

As plaintiff's and defendant's Motions for Summary Judgment each relate to the same central legal issues, this Opinion will address the parties' Motions jointly.

Section 4251 of the Internal Revenue Code, 26 U.S.C. § 1 *et seq.* imposes a three percent excise tax on amounts paid for "communications services," which includes "toll telephone service." 26 U.S.C. § 4251(a)(1) and (b)(1).[5] Section 4252(b) defines two types of "toll telephone service," as follows:

> **(b) Toll Telephone service.** For purposes of this subchapter, the term "toll telephone service" means—
>
> (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States.
>
> (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b).

Plaintiff OfficeMax argues that the long-distance telephone service provided to it by MCI for the years 1999—2002 does not

---

**5.** This tax is imposed upon the person paying for the telephone service, but the service provider is required to collect the tax from its subscribers and remit it to the government. 26 U.S.C. § 4251(a)(1).

constitute "toll telephone service" as defined above because (1) the charges imposed on the service at issue did not vary with distance as required by the plain language of § 4252(b)(1); and (2) the service at issue was not flat-rated for unlimited usage as required by § 4252(b)(2).

Defendant United States argues principally that the long-distance telephone service at issue does constitute "toll telephone service" under § 4252(b)(1), relying heavily on the Internal Revenue Service's *Communications; Offshore Radio Telephone Service; Satellite*, 1979 WL 51192, Rev. Rul. 79–404 (1979) which interprets that statute to mean that a charge need not vary by distance but only by elapsed transmission time. Alternatively, defendant argues that plaintiff's service is taxable as either (1) unlimited communications within a specified area under § 4252(b)(2) or (2) "local telephone service" under § 4252(a).

This Opinion will address each of the parties' arguments in turn.

### I. Section 4252(b)(1)

### A. The Parties' Arguments

As set forth above, § 4252(b)(1) defines "toll telephone service" as including "a telephonic quality communication for which ... there is a toll charge which varies in amount with the **distance and elapsed transmission time** of each individual communication." 26 U.S.C. § 4252(b)(1) (emphasis added). Plaintiff OfficeMax maintains that the long-distance services provided to it by MCI do not fall within this definition because they are billed on a per-minute basis (i.e. elapsed transmission time) only and do not vary with distance.

Plaintiff illustrates this point by setting forth tables comparing MCI's rates for

service within the state of Missouri in 1999 vs. in 2000 and 2001. In 1999, MCI's rates for this service depended upon so-called "mileage bands," whereby the applicable rate depended upon the distance between the originating and terminating points of the call (e.g., calls between miles 0—292 were billed at $.072 for the first 18 seconds whereas calls between miles 293—430 were billed at $.0787). By contrast, in 2000 and 2001, plaintiff argues that MCI's rates for this service were not dependent upon "mileage bands" but, rather, were billed on a per-minute basis regardless of the distance between a call's origination and termination points. See Plaintiff's Motion for Summary Judgment at pages 8–9.[6]

Based on the above, plaintiff argues that, under the plain meaning of § 4252(b)(1), the long-distance service at issue does not constitute "toll telephone service" because the charges do not vary with both distance **and** time, but only with time.

Defendant disputes plaintiff's interpretation of § 4252(b)(1) and advocates a different interpretation of the "plain meaning" of that statute. Specifically, defendant maintains that, on its face, the statute does not require a variation in the distance of a call (or even in the distance toll rate applied to a call) in order to constitute a "toll telephone service." Rather, defendant argues that the statute requires that the *charge* vary in amount with distance and time. Because a charge is a measure of a dollar amount whereas distance and time are units of measurement and do not convert into dollar figures, defendant maintains that a "charge" can only vary with distance and time "if there is some type of implicit calculus." (Defendant's Motion for

---

**6.** Plaintiff also notes that MCI's contracts characterize the charges for OfficeMax's interstate services as "postalized," which plain-

tiff claims is industry jargon for rates that do not vary with distance.

Summary Judgment/Brief in Opposition at 9).

Defendant then proceeds to explain that there was an "understood calculus" for arriving at a charge for long distance calls when the statute was amended in 1965.[7] Specifically, defendant argues that, in 1965, AT & T (which was the predominant communications common carrier at the time) charged for long-distance calls either (a) on the basis of elapsed time of each call times a charge per minute; or (b) on the basis of a periodic charge that equaled a flat rate or was calculated on total elapsed transmission time. (Pearce Decl. at p. 3–4).[8] Where the charge was based on the former (i.e., elapsed time multiplied by rate per minute), AT & T determined the rate per minute on the basis of "mileage bands." (Pearce Decl. at p. 3–4). Under this system, all calls within a certain mileage band were charged at the same rate per minute and calls to a different mileage band were charged a different rate. (Pearce Decl. at p. 4). Defendant maintains that this was the pricing scheme for long-distance calls when Congress amended the statute and that Congress intended to define "toll telephone service" consistent with this scheme. (Pearce Decl. at p. 5; Vasington Decl. at ¶¶ 16–17).

In the late 1990's, however, the method of computing the long-distance toll rate per minute changed. Carriers such as AT & T and MCI apparently abandoned the use of multiple mileage bands for pricing long-distance calls and converted to a system whereby the long-distance rate was aggregated into a single long-distance rate for a single band consisting of the entire continental United States. (Pearce Decl. at p. 10).

Plaintiff essentially maintains that the abandonment of the multiple mileage band pricing scheme has eliminated distance from the calculation of charges for the long-distance service at issue because the rate for each call no longer varies by distance; thus, the long-distance service no longer falls within the definition of "toll telephone service." Defendant maintains that interpreting the statute to exclude charges imposed under this pricing scheme, as urged by plaintiff, would render § 4251 "ineffective despite Congress' intention to raise revenue through the statute."

To avoid this result, defendant argues that the statute should be interpreted to mean that the charge must vary as the product of the distance toll rate multiplied by the elapsed time of the call. In other words, defendant argues that "the calculation of the overall toll charge must include a distance toll rate to satisfy the distance component of the statute." (Defendant's Reply Brief/Sur–Reply at 1). Under this construction, defendant urges that the use of a single mileage band pricing scheme constitutes a "distance toll rate" and thereby satisfies the distance component of the statute.[9]

---

7. As discussed more fully *infra*, prior to 1965, § 4252 defined the term "toll telephone service" broadly to include a telephone message for which (1) there is a toll charge and (2) the charge is paid in the United States. 26 U.S.C. § 4252 as enacted P.L. 859. Subsequently, Congress passed the Excise Tax Reduction Act of 1965, which "updated and modified" the definition of "toll telephone service" to its current form.

8. Defendant attaches to its Motion for Summary Judgment the Declarations of Alan Pearce, Ph.D and Paul Vasington. Dr. Pearce's Declaration discusses the pricing strategies of the nation's long-distance telecommunications carriers from the mid–1960's to the present. Mr. Vasington's Declaration presents a summary of the history of the federal telephone excise tax.

9. By way of example, defendant notes that, even in 1965, charges did not literally vary

Defendant relies heavily on 1979 WL 51192, Rev. Rul. 79–404 in support of this argument. In that Ruling, the Internal Revenue Service ("IRS") considered whether the federal excise tax set forth in § 4251 applied to certain communication services between ships at sea or other offshore facilities and telephones in the United States. The services at issue allowed a call from a ship's radio station to be relayed through a satellite to a landline station in the United States that was connected into the regular long distance telephone system for completion of the call. The charge for this service was based on elapsed time only and did not vary with distance.

At the outset, the IRS acknowledged that "[l]iterally, the service provided in this case does not come within the definition of ... 'toll telephone service' as ... currently defined in section 4252 of the Code" because "the charge for such service does not vary with distance and therefore does not meet the requirement of section 4252(b)(1)." 1979 WL 51192, Rev. Rul. 79–404 at 2. However, the IRS went on to find that the service was nonetheless taxable, stating that the service was "within the intended scope of taxable 'toll telephone service.'" *Id.*

In reaching this decision, the IRS relied on two United States Supreme Court decisions which it claims stand for the proposition that "... a statute may be given an interpretation other than that which follows from its literal language where such interpretation is required in order to comport with the legislative intent." Specifically, the IRS cited *United States v. American Trucking Associations*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) and

*Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955) for the principle that when the plain meaning of a statute leads to absurd or futile results, or would defeat rather than further the purpose of Congress, it is permissible to look "beyond the words to the purpose of the act." *Id.*

The IRS then concluded that the legislative history of § 4252 indicated that the type of service at issue was within the intended scope of taxable "toll telephone service." The IRS reasoned that, prior to the 1965, § 4252 was drafted broadly to include the service at issue within the definition of "toll telephone service." Congress amended the definition in 1965 in order to exempt certain private communication services but "[t]here is no indication that Congress otherwise intended to make changes in the types of service subject to tax." *Id.* at 3. Thus, the IRS ruled as follows:

> The service in this case is essentially 'toll telephone service' as described in section 4252(b)(1) of the Code, even though the charge for calls between remote maritime stations and stations in the United States vary with elapsed transmission time only. The toll charges described in section 4252(b)(1), that vary in amount with both distance and elapsed transmission time of the individual communication, reflect Congress' understanding of how the charges for long distance calls were computed at the time the section was enacted. **The intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because the**

with distance of the call but with the product of the rate times the elapsed time, noting that all calls within a certain mileage band were

billed at the same rate even though the mileage band itself encompassed a broad area.

charges for it are determined in a manner which is not within the literal language of the statute.

*Id.* (emphasis added).

Defendant argues that the reasoning and outcome of the above Revenue Ruling applies equally to the long-distance service at issue in the instant case and should be afforded "substantial deference." Defendant also notes that, subsequent to the publication of 1979 WL 51192, Rev. Rul. 79–404, Congress re-enacted the communications excise tax imposed by § 4251 several times and did not change the definition of "toll telephone service" set forth in § 4252(b)(1), which defendant argues can be "taken as approval by Congress of the IRS interpretation" of that statute. Finally, defendant maintains that the legislative history and "historical and textual context" of the changes to § 4252(b)(1) support defendant's reading of that statute as well.[10]

Plaintiff argues that 1979 WL 51192, Rev. Rul. 79–404 is not entitled to any deference because (1) it contradicts the plain and unambiguous language of the statute; and (2) the Supreme Court opinions upon which it relies are either distinguishable or have been narrowed by subsequent Supreme Court decisions. In response to defendant's re-enactment argument, plaintiff cites case law for the position that Congressional re-enactment is an "unreliable indicator" of Congressional intent and should be accorded little, if any, weight. Finally, plaintiff strongly disputes defendant's characterization of the legislative history of § 4252(b)(1).

## B.   Analysis

### 1.   Plain Language of § 4252(b)(1)

■ As the central issue in this matter is the interpretation of a federal statute, this Opinion begins with a summary of general, well-established principles of statutory construction. As the Sixth Circuit has explained on many occasions, "[i]n all cases of statutory construction, the starting point is the language employed by Congress." *Chapman v. The Higbee Company,* 319 F.3d 825, 829 (6th Cir.2003). *See also United States v. Health Possibilities, P.S.C.,* 207 F.3d 335, 338–39 (6th Cir. 2000); *United States v. Ables,* 167 F.3d 1021, 1028 (6th Cir.1999); *United States v. Mills,* 140 F.3d 630, 633 (6th Cir.1998). In other words, courts engaged in statutory interpretation must "look first to the plain language of the statute." *The Limited, Inc. v. Commissioner of Internal Revenue,* 286 F.3d 324, 332 (6th Cir.2002). Where "the statute's language is plain, the sole function of the court is to enforce it according to its terms." *Chapman,* 319 F.3d at 829.

■ If the text of a statute is ambiguous, a court may look to legislative history to interpret it. *The Limited, Inc.,* 286 F.3d at 332. *See also Palmer v. United States (In Re Palmer),* 219 F.3d 580, 584 (6th Cir.2000). "Resort to legislative history is not appropriate, however, if the text of the statute may be read unambiguously and reasonably." *The Limited, Inc.,* 286 F.3d at 332. *See also Mills,* 140 F.3d at 633 ("Only when the language of the legislation is unclear should we look beyond the wording of the statute to the intent of the legislature").

---

**10.** As discussed *infra,* defendant also argues, in the alternative, that even if this Court were to agree with plaintiff's interpretation of § 4252(b)(1), the long-distance service at issue herein still falls within the definition of

"toll telephone service" because the charges are based on whether the call is intrastate, interstate or international and, thus, do vary by distance.

Finally, and of particular relevance in the instant case, this Court's statutory analysis is guided by the principle that "statutes imposing a tax are construed liberally in favor of the taxpayer." *The Limited, Inc.*, 286 F.3d at 332. *See also Weingarden v. Comm'r of Internal Revenue*, 825 F.2d 1027, 1029 (6th Cir.1987).

As set forth above, the parties in the instant case each advocate a different interpretation of the "plain language" of § 4252(b)(1). Plaintiff maintains that the statute's express use of the words **"distance and** elapsed transmission time" means that a charge must vary by **both** distance and time in order to fall within the definition of "toll telephone service." Plaintiff insists that the language is clear and unambiguous: by using the word "distance" in the conjunctive with "elapsed transmission time," the statute clearly provides that distance must be a factor in determining the charge in order for the service to constitute a taxable "toll telephone service." Plaintiff maintains that, because the charges herein are not "distance-sensitive," they do not fall within the plain and unambiguous language of § 4252(b)(1).

Defendant maintains that, on its face, the language of the statute does not require a variation in distance *per se.* Rather, the statute only requires that the calculation of the charge must include a "distance toll rate" in order to satisfy the distance component of the statute. According to defendant, neither the distance of the individual call or the distance toll rate applied to the call need vary with each individual communication. Rather, only the product of the distance toll rate times the elapsed transmission time must vary in order to fall within the language of the statute. Because the charges for the service herein vary in terms of the product of distance toll rate times elapsed transmission time, defendant maintains the long-distance service at issue constitutes "toll telephone service" and is, therefore, taxable.[11]

The Court agrees with plaintiff's construction of § 4252(b)(1). On its face, that statute clearly requires that the charge vary in amount with both "distance and elapsed transmission time for each individual communication." As the Sixth Circuit recently noted, " 'every word of a statute must be presumed to have been used for a purpose.' " *Aeroquip Vickers, Inc. v. Commissioner of Internal Revenue*, 347 F.3d 173, 182 (6th Cir.2003) (quoting 2A Singer, Norman J., *Sutherland Statutes and Statutory Construction*, § 46.06 at 192 (2000 ed.)). Congress expressly chose to define "toll telephone service" in terms of variation in both distance and time.[12] The Court finds that the plain language of this statute is clear and unambiguous: a charge must vary by both distance and time in order to constitute a "toll telephone service."

Defendant acknowledges that, under its construction, there need not be a variation in either the distance of the call itself or even in the distance toll rate applied to the call in order for a charge to constitute "toll telephone service." Despite the defendant's protestations to the contrary, the

---

11. As plaintiff correctly notes, defendant's "plain language" argument is inconsistent with defendant's reliance on Revenue Ruling 79–404. In that Ruling, the IRS expressly acknowledges that the literal language of § 4252(b)(1) requires that a charge vary by distance, but determines that this language leads to "absurd results" which are allegedly contrary to Congressional intent. Defendant's argument with regard to Revenue Ruling 79–404 is discussed at length *infra.*

12. Indeed, by defendant's own admission, at the time § 4252(b)(1) was amended in 1965, charges for long-distance service were influenced by distance.

Court finds that defendant's reading of the statute effectively reads the requirement of variation by distance out of the statute. The Court further finds that this result is flatly inconsistent with the plain language of the statute and, therefore, rejects defendant's argument to the contrary.

The Court notes that the District Court for the Southern District of Florida recently considered the statutory language at issue herein and found such language to be ambiguous. In *American Bankers Insurance Group, Inc. ("ABIG") v. United States*, 308 F.Supp.2d 1360, 2004 WL 539224 (S.D.Fla.2004), plaintiff ABIG purchased intrastate, interstate and international long-distance service from AT & T. Under the terms of the relevant contracts, ABIG paid a uniform toll rate for all intrastate calls, a different uniform rate for all interstate calls made within the U.S., and toll rates for international calls that varied only according to the country to which the calls were being placed.

AT & T collected federal excise taxes on all these services and remitted them to the IRS. Believing these calls did not fall within the definition of "toll telephone service" because the charges did not vary by distance, ABIG filed requests for refund. When the IRS did not respond to its requests, ABIG filed suit. As in the instant case, the parties filed cross-motions for summary judgment on the issue of whether long-distance service charges that do not vary by distance constitute "toll telephone service" under § 4252(b)(1) of the Internal Revenue Code.

In a decision dated January 29, 2004, the district court granted summary judgment in favor of the government. Central to its ruling was the district court's conclusion that the use of the word "and" in the phrase "distance and elapsed transmission time" is ambiguous. Specifically, the court noted that "it is the duty of the court to ascertain the clear intention of the legislature" and that, "[i]n order to do this, courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" *Id.* at 4 (quoting *United States v. Fisk*, 70 U.S. (3 Wall.) 445, 447, 18 L.Ed. 243 (1865)). The court then observed that the word "and" has many different meanings and usages depending on its context, and can be used either in the conjunctive sense to mean "and" or in the cumulative sense to mean "either or both of two alternatives." *Id.* at 4–5. Construing the phrase "distance and elapsed transmission time," the court found that "the statutory language is ambiguous because Congress could be using the conjunctive word 'and' in this instance to mean 'either or both of two alternatives,' that is, to mean where there is a toll charge which varies in amount with the distance or elapsed transmission time or both." *Id.* at 5. The court then found that an alternative reading of the word "and" as "or" in § 4252(b)(1) was further supported by the use of the word "and" in other portions of the statute.

Based on the above analysis, the court concluded that the definition of "toll telephone service" in § 4252(b)(1) was ambiguous and proceeded to consider evidence of congressional intent, including the legislative history, the purpose of the Excise Tax Reduction Act, and the context of that Act's enactment. Based on its review of these sources, the court determined that "the clear intent of Congress from before the 1965 amendment to the present day has been to tax all long-distance telephone service, regardless of whether the toll rate for that service varied only by distance, only by elapsed time, or by both." *Id.* at 17. Accordingly, the court found that the long-distance service at issue was taxable and granted summary judgment in favor of the government.[13]

---

**13.** In reaching this conclusion, the court also accorded "great weight" to Revenue Ruling 79–404. *Id.* at 14–15.

This Court respectfully disagrees with the conclusion of the *ABIG* court that the phrase "distance and elapsed transmission time" is ambiguous. While the Court recognizes that the word "and" can have different meanings and can be used cumulatively in certain circumstances, it does not believe that the use of the word "and" in the phrase "distance and elapsed transmission time" can be read other than in the conjunctive. The Court believes its conclusion on this issue is particularly supported by the fact that both distance and time were, in fact, factors in determining charges for toll telephone service at the time of the 1965 amendments. Thus, in this context, it is only logical to conclude that when Congress wrote the phrase "distance and elapsed transmission time," it meant for the word "and" to be read conjunctively to mean that a charge must vary by both distance and elapsed transmission time, and not by one or the other.

Although the present-day Congress might wish to tax long-distance service as it is currently charged (i.e., on the basis of elapsed transmission time only), this Court believes the relevant inquiry is what Congress intended when it amended the statute in 1965. Given the fact that both distance and time influenced charges for long-distance service at that time, this Court feels compelled to conclude that the definition of that term is not ambiguous and that Congress' plain and unambiguous requirement that charges must vary by both distance and time should be given full effect.[14]

In the alternative, defendant argues that, even assuming plaintiff's interpretation of § 4252(b)(1) is correct, the long-distance service at issue herein nevertheless falls within the definition of "toll telephone service" because the charges for such service at issue do, in fact, vary with distance. Specifically, defendant emphasizes that MCI's charges are based on whether the call is interstate, intrastate or international. Defendant maintains that, although the variation in rates is delineated by boundaries of "geopolitical units" rather than multiple mileage bands, "the fact is that different distances produce different rates." (Defendant's Motion for Summary Judgment/Brief in Opposition at 18). Thus, defendant argues that, even under plaintiff's construction of the statute, the long-distance service at issue is taxable.

Plaintiff maintains that the distinction between intrastate, interstate and international calls is solely for the purpose of allocating regulatory responsibility between the FCC and state regulators. Specifically, plaintiff notes that the Communications Act of 1934 establishes a "system of dual state and federal regulation over telephone service," under which the FCC regulates interstate and international service and state agencies regulate intrastate communications. Defendant does not dispute plaintiff's description of the division of regulatory responsibilities between the states and the FCC and, indeed, defendant's own expert, Dr. Pearce, avers to this regulatory scheme. (Pearce Decl. at p. 2).

Plaintiff further argues that "no valid conclusions about the relationship between

---

**14.** Because this Court finds that the statutory language is not ambiguous, it therefore finds that it is not necessary or appropriate to consider the Act's legislative history or other extrinsic evidence of congressional intent. However, as discussed at length *supra*, even if it were to consider the legislative history, this Court does not believe that that history clearly indicates that Congress intended to encompass long-distance service for which the charge does not vary by distance within the definition of "toll telephone service." Moreover, the Court does not believe that the definition of this term must be construed in the manner advocated by defendant in order to avoid an absurd result.

price and distance can be drawn from the jurisdictional classification of a call." (Plaintiff's Reply Brief/Brief in Opposition at 14). By way of example, plaintiff points out that a call from Cleveland to any location within the United States (outside of Ohio) will be billed at the same interstate rate, regardless of the distance of the actual communication. Thus, a call from Cleveland to Erie, Pennsylvania will be billed at the same rate as a call from Cleveland to Los Angeles, California. Similarly, a call from Cleveland to Akron, Ohio will be billed at the same intrastate rate as a call from Cleveland to Columbus, Ohio. Moreover, plaintiff argues (and defendant does not dispute) that the calls for interstate and intrastate calls may even be inversely related; i.e., the charge for an interstate call of approximately 500 miles (say from Cleveland to New York City) could be far lower than the charge for an intrastate call of approximately 50 miles (say from Cleveland to Akron, Ohio). (Plaintiff's Reply Brief/Brief in Opposition at 14). Thus, plaintiff maintains that whether a call is interstate, intrastate or international is relevant only for state vs. federal jurisdictional purposes and does not bear any rational relationship to distance.

The Court agrees with plaintiff. Although in a broad sense distance may in some cases be indirectly implicated by the jurisdictional classifications at issue, the examples cited by plaintiff demonstrate that distance in and of itself does not result in a variation in the charge, as required by § 4252(b)(1). Given the regulatory allocation purposes that these jurisdictional classifications serve and the

absence of any evidence that distance itself results in a variation in the charge, the Court finds that the jurisdictional classification of the long-distance service at issue does not render such service "toll telephone service" under § 4252(b)(1).

**2. Revenue Ruling 79–404**

Defendant next argues that this Court should find that the long-distance service at issue nevertheless constitutes "toll telephone service" under the rationale set forth in 1979 WL 51192, Rev. Rul. 79–404. As set forth *supra*, in 1979 WL 51192, Rev. Rul. 79–404, the IRS acknowledged that the service at issue in that case (service between ships at sea and telephones in the United States) did not come within the literal definition of "toll telephone service" because the charge for the service did not vary with distance. However, the IRS nonetheless found that the service was taxable because it believed that the legislative history of the Excise Tax Reduction Act of 1965 indicated that the service was within the "intended scope" of taxable "toll telephone service" under § 4252(b)(1).

Since its release in 1979, 1979 WL 51192, Rev. Rul. 79–404 has been interpreted by the IRS to stand for the general proposition that a long-distance telephone call for which the charge varies with elapsed transmission time but not with distance constitutes taxable "toll telephone service." [15] In the instant case, defendant maintains that this Court should give substantial deference to the reasoning and conclusion set forth in 1979 WL 51192, Rev. Rul. 79–404, and apply it in the instant case to find that the long-distance

**15.** In an effort to further solidify its position, the IRS issued a Notice of Proposed Rulemaking in April 2003, in which it seeks to amend the Facilities and Excise Tax Regulations set forth in 26 CFR Part 49 to expressly provide that "[f]or a communications service to constitute toll telephone service described in section 4252(b)(1), the charge for the service need not vary with the distance of each individual communication." *See* 68 Fed.Reg. 15690 (April 1, 2003). As of the date of this Opinion, no Final Rulemaking formally effectuating this proposed change has been promulgated.

service at issue is "toll telephone service" under § 4252(b)(1).

▮ Plaintiff strenuously argues that this Court should accord no deference to 1979 WL 51192, Rev. Rul. 79–404 because (1) it conflicts with the plain language of § 4252(b)(1); (2) the Supreme Court cases upon which it relies are either distinguishable or have been sharply curtailed; and (3) there is no indication in the legislative history to support the Ruling's conclusion that the service at issue is within the "intended scope" of the statute.

The Sixth Circuit very recently considered the level of deference to be afforded Revenue Rulings. In *Aeroquip–Vickers, Inc. v. Commissioner of Internal Revenue,* 347 F.3d 173 (6th Cir.2003), the Sixth Circuit noted that it had previously accorded deference to Revenue Rulings under the standard set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[16] Under this standard, the Sixth Circuit had held that "a revenue ruling is entitled to some deference unless 'it conflicts with the statute it supposedly interprets or with that statute's legislative history or if it is otherwise unreasonable.'" *Id.* at 180 (quoting *Cen-Tra, Inc. v. United States,* 953 F.2d 1051, 1056 (6th Cir.1992)). *See also Wuebker v. Comm'r,* 205 F.3d 897, 903 (6th Cir.2000).

However, the court went on to note that "recent Supreme Court decisions limiting the *Chevron* doctrine have called our earlier cases into question." *Id.* Specifically, the court noted that, in *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) and *United States v. Mead,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), the Supreme

Court found that "*Chevron* deference is appropriate only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority' through 'notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.'" *Id.* (quoting *Mead,* 533 U.S. at 226–227, 121 S.Ct. 2164).

In *Mead,* the Supreme Court further noted that "an agency's interpretation may merit some deference whatever its form, given the 'specialized experienced and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires.'" *Mead,* 533 U.S. at 234, 121 S.Ct. 2164. However, in the absence of evidence that the agency interpretation was promulgated in the exercise of congressionally delegated authority, "[t]he weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 228 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

Applying *Christensen* and *Mead* in the context of revenue rulings, the Sixth Circuit held as follows:

When promulgating revenue rulings, the IRS does not invoke its authority to make rules with the force of law. Specifically, the IRS does not claim for rev-

**16.** In *Chevron,* the Supreme Court held that when Congress has "explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regula-

tion," and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute. *Chevron,* 467 U.S. at 843–844, 104 S.Ct. 2778.

enue rulings "the force and effect of Treasury Department regulations." *Rev. Proc.,* 89–14, 1989–1 C.B. 814, 1989 WL 519042 (1989). **In light of the Supreme Court's decisions in** *Christensen* **and** *Mead,* **we conclude that** Revenue Ruling 82–20 **should not be accorded** *Chevron* **deference.** Revenue rulings do, however, constitute "precedent to be used in the disposition of other cases." Rev. Proc. 89–14, 1989–1 C.B. 815. Revenue rulings also serve as "official interpretation[s]" by the IRS of the tax laws. Treas. Reg. § 601.201(a)(6). [* * *] **Consequently, the level of deference to be accorded to** Revenue Ruling 82–20 **depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, lacking power to control."** *Mead,* 533 U.S. at 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (quoting *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161, 89 L.Ed. 124).

*Aeroquip–Vickers,* 347 F.3d at 181 (emphasis added).[17]

Accordingly, under *Aeroquip–Vickers,* this Court will not accord *Chevron* deference to Revenue Ruling 79–404 but, rather, will determine the appropriate level of deference to be accorded depending on the Ruling's "power to persuade," i.e., the validity and thoroughness of its reasoning and its consistency with earlier and later pronouncements.

■ In Revenue Ruling 79–404, the IRS determined, based on *United States v. American Trucking,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) and *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955), that "a statute may be given an interpreta-

tion other than that which follows from its literal language where such interpretation is required in order to comport with the legislative intent." Rev. Ruling at 2. It then concluded that the "legislative history of section 4252 of the Code indicates that the type of service at issue herein is within the intended scope of taxable 'toll telephone service.'" *Id.* at 3.

This conclusion was based on the following reasoning:

> Prior to the amendment of section 4252 of the Code by section 302 of the Excise Tax Reduction Act of 1965, 1965–2 C.B. 568, 577–578, one of the services taxed was "toll telephone service," which was defined, in part, as a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States.

> Prior to the 1965 amendment the communication service considered here would have been within the definition of toll telephone service. The legislative history pertaining to the Excise Tax Reduction Act of 1965, 1965–2 C.B. 643 and 676, indicates that Congress intended to exempt certain private communication services from the tax and repeal the tax on telegraph service and wire and equipment service. There is no indication that Congress otherwise intended to make changes in the types of service subject to tax.

*Id.* Thus, the IRS concluded that "the intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute." *Id.* On this basis, it concluded that the service at

---

**17.** In *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001), the Supreme Court recently declined to consider "whether the Revenue Rulings themselves are entitled to deference."

issue was within the meaning of "toll telephone service" despite the fact that the charge for the service did not vary by distance as required by the literal language of § 4252(b)(1).

For the following reasons, the Court finds that the reasoning set forth in Revenue Ruling 79–404 is not reasonable and, therefore, entitled to no deference. A brief discussion of the legislative history of the Excise Tax Reduction of 1965 is necessary for this analysis.

As the House and Senate Reports make clear, the federal excise taxes at issue "were initially levied as emergency revenue-raising measures at the time of the Korean War, or World War II, or the depression of the 1930's." H.R.Rep. No. 89–433, 1965 U.S.C.C.A.N. 1645; S.Rep. No. 89–324, 1965 U.S.C.C.A.N. 1690. As a result, "they were not developed on any systematic basis and are often discriminatory in their application to the taxed industries or to purchasers of the taxed products." *Id.* With the emergencies that prompted these excise taxes past, the House and Senate concluded that "the selective taxes are now the source of undesirable discrimination." H.R.Rep. No. 89–433, 1965 U.S.C.C.A.N.1965, 1655; S.Rep. No. 89–324, 1965 U.S.C.C.A.N. 1690, 1704.

The Excise Tax Reduction Act of 1965 (hereinafter "the Act") was intended to remedy this situation. With regard to the federal excise taxes on communication services set forth in § 4251 of the Internal Revenue Code, the Act effected several significant changes. First, the Act lowered the rate of taxation for local telephone service, toll telephone service, and teletypewriter exchange service. H.R.Rep. No. 89–433, 1965 U.S.C.C.A.N. 1645, 1676; S.Rep. No. 89–324, 1965 U.S.C.C.A.N. 1690, 1724–1725. Second, the Act provided an exemption from taxation for certain private communication services. H.R.Rep. No. 89–433, 1965 U.S.C.C.A.N. 1645, 1677; S.Rep. No. 89–324, 1965 U.S.C.C.A.N. 1690, 1726. Third, the Act repealed the excise tax on telegraph service and wire and equipment service. H.R.Rep. No. 89–433, 1965 U.S.C.C.A.N. 1645, 1678; S.Rep. No. 89–324, 1965 U.S.C.C.A.N. 1690, 1727.

Finally, and most significantly for purposes of the instant case, the Act "updated and modified" the definitions of local telephone service, toll telephone service, and teletypewriter exchange service. Prior to the Act, the term "toll telephone service" was defined broadly as "a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States."[18] 26 U.S.C. § 4252(b), as enacted by P.L. 85–859. The 1965 Act changed this definition to the current definition of "toll telephone service," explaining the reasons for the change as follows:

> The definitions of local telephone service (previously general telephone service), toll telephone service, and teletypewriter exchange service have been updated and modified to make it clear that it is the service as such which is being taxed and not merely the equipment being supplied. * * * Toll telephone service is defined as being a telephonic quality communication for which a toll charge is made which varies in amount with the distance and elapsed transmission time of individual communications, but only if the charge is paid within the United States. * * *

H.R.Rep. No. 89–433, 1965 U.S.C.C.A.N. 1645, 1676–1677; S.Rep. No. 89–324, 1965 U.S.C.C.A.N. 1690, 1725.

The above is the only language in either the House or Senate Reports which ad-

---

**18.** Both parties agree that the long-distance service at issue would have fallen within the former, broad definition of "toll telephone service."

dresses the current definition of "toll telephone service." This definition has not been amended since the 1965 Act and there is no subsequent legislative history specifically addressing the intended meaning of this term.

Plaintiff argues that it can not reasonably be drawn from the House and Senate Report language set forth above that Congress intended to encompass long-distance service for which the charge does not vary by distance within the definition of "toll telephone service." In support of this argument, plaintiff emphasizes that the discussion of "toll telephone service" in the above legislative history is identical in all pertinent respects to the definition of that term in the statute, and that both the statute and the legislative history expressly require that a charge for such service vary by distance. Plaintiff further contends that Revenue Ruling 79–404 relies entirely on legislative silence in support of its conclusion (i.e., the absence of any indication that Congress intended to narrow the type of long-distance services subject to tax) and that such reliance is inappropriate in light of the clear and plain language employed in both the legislative history and the statute itself requiring that a charge vary by distance.

Defendant supports Revenue Ruling 79–404 by arguing that Congress modified the previously broad definition of "toll telephone service" for the sole purpose of avoiding the taxation of private communication services for which a separate charge is made. Defendant argues that, by excluding such private communications from taxation, it is "thus implicit that any separate charge for the transmission of long-distance or local telephone transmission or through the use of a communications common carrier would be subject to excise tax." (Defendant's Motion for Summary Judgment at 16). Accordingly, defendant maintains that the legislative history indicates that Congress intended only to exempt certain private communication services and did not otherwise intend to narrow the local or long-distance services subject to tax. Defendant thus argues that this Court should look beyond the plain language of the statute and tax the service at issue herein in order to avoid frustrating the intent of Congress.

The Court finds defendant's arguments in support of Rev. Ruling 79–404 unpersuasive. The legislative history makes clear that Congress took the broad definition of "toll telephone service" in § 4252(b)(1) and expressly modified it to include the additional requirements that charge vary by distance and time. The House and Senate Report language is, in fact, identical in all material respects to the plain language of the statute itself. The Court must presume that Congress meant what it said when it tailored the definition of taxable "toll telephone service" to include distance and time requirements, particularly in light of the overall goal of the Act to reduce and restrict the application of federal excise taxes.

Thus, Revenue Ruling 79–404's conclusion that Congress intended only to exempt certain private communication services and repeal the tax on telegraph and wire/equipment service but that "there is no indication that Congress otherwise intended to make changes in the types of service subject to tax," is belied by the fact that Congress expressly chose to alter the formerly broad statutory language to include the requirements that the charge vary by both distance and time. Defendant's argument that this Court should nevertheless interpret the current definition of "toll telephone service" to include charges that do not vary with distance would render Congress' modification of this definition meaningless.

Revenue Ruling 79–404 also relies on *American Trucking* and *Corn Products* for the proposition that a statute may be given an interpretation other than that which follows from its literal language where such interpretation is required in order to comport with the legislative intent. In *American Trucking*, the Supreme Court was asked to determine the power of the Interstate Commerce Commission ("ICC") under the Motor Carriers Act of 1935 to establish reasonable requirements with respect to the qualifications and maximum hours of service of certain employees of motor carriers. The question was essentially a jurisdictional one, presenting the issue of whether the term "employee" as used in Section 204 of the Motor Carriers Act should be interpreted broadly to bring a wide range of employees within the jurisdiction of the ICC or narrowly so as to include within that jurisdiction only those employees who duties affect safety. Significantly, the Court expressly noted that "[n]one of the words are defined by the Section, 203, devoted to the explanation of the meaning of the words used in the Act." *American Trucking*, 310 U.S. at 541, 60 S.Ct. 1059.

To resolve the issue, the Court articulated the following principles of statutory construction:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases, we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' [cita-

tions omitted] this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use [citations omitted], however clear the words may appear on 'superficial examination.'

*Id.* at 543–544, 60 S.Ct. 1059. After reviewing the legislative history of the Act which indicated that Congress intended to limit the scope of the ICC's jurisdiction to employees whose duties affect safety of operation, the Court determined that it would not interpret the term "employee" in the unusually broad manner advocated by plaintiff and, instead, limited the meaning of that term to those employees whose activities affect safety. *Id.* at 553, 60 S.Ct. 1059.

The Court finds that Revenue Ruling 79–404's reliance on *American Trucking* is misplaced. As an initial matter, the Court in *American Trucking* was asked to interpret a statutory term that was not defined in the Act before it. However, the statutory term at issue herein (i.e., the term "toll telephone service") is expressly defined in § 4252(b)(1) and that definition is both clear and unambiguous in requiring that the charge vary with both distance and time. Moreover, in *American Trucking,* the Court found express indications in the legislative history that Congress intended to limit the scope of the ICC's jurisdiction to employees whose duties affect safety of operation. As discussed above, however, there are no comparable indications in the legislative history to the Excise Tax Reduction Act of 1965 and, indeed, it is more logical to draw the opposite conclusion in light of the fact that Congress expressly chose to narrow a formerly broadly-worded definition of the term "toll telephone service."

The Court further finds that Revenue Ruling 79–404's reliance on *Corn Products* is also misplaced. In *Corn Products,* the Court held that corn futures owned by a refiner of corn syrup were not "capital assets" within the meaning of § 1221 of the Internal Revenue Code. Although the corn futures did not come within the literal language of the exclusions set forth in that section, the Court held that "the capital-asset provision of [§ 1221] must not be so broadly applied as to defeat rather than further the purpose of Congress." *Corn Products,* 350 U.S. at 52, 76 S.Ct. 20. The Court then held that the futures were ordinary rather than capital assets because "Congress intended that profits and losses arising from the everyday operation of a business can be considered as ordinary income or loss rather than capital gain or loss." *Id.*

However, in *Arkansas Best Corp. v. Commissioner of Internal Revenue,* 485 U.S. 212, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988), the Supreme Court sharply narrowed the decision in *Corn Products.* In *Arkansas Best,* petitioner argued that "stock purchased and held for a business purpose, without any substantial investment motive, is an ordinary asset whose sale gives rise to ordinary gains or losses," despite the fact that the stock at issue fell within the literal definition of "capital asset" in § 1221 and was outside the statutory exclusions. *Arkansas Best,* 485 U.S. at 214–216, 108 S.Ct. 971. Petitioner's argument was based almost entirely on its broad reading of the Court's decision in *Corn Products. Id.* at 219, 108 S.Ct. 971.

The Court rejected petitioner's reading of *Corn Products,* holding that it "finds no support in the language of § 1221." *Id.* at 216, 108 S.Ct. 971. Rather, the Court determined that "*Corn Products* is properly interpreted as standing for the narrow proposition that hedging transactions are an integral part of a business' inventory-purchase system and fall within the inventory exclusion of § 1221." *Id.* at 222, 108 S.Ct. 971. Because petitioner was not a dealer in stock and had never suggested that stock fell within the inventory exclusion, the Court found that *Corn Products* "has no application to this case." *Id.*

In light of the Supreme Court's significant narrowing of *Corn Products,* the Court finds that that decision does not support the IRS' reasoning and conclusion in Revenue Ruling 79–404. Rather, the Court finds that the Supreme Court's decision in *Crooks v. Harrelson,* 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156 (1930) applies with more force to the issue presented herein.

In *Crooks,* the respondents' decedent died testate, leaving within the state property and assets which included certain real property. *Crooks,* 282 U.S. at 57, 51 S.Ct. 49. The IRS included the real property as part of the gross estate for the purpose of computing the tax. *Id.* Respondents claimed a refund on the ground that the real property was not subject to an estate tax, which refund the IRS denied. *Id.*

Quoting the relevant Internal Revenue Code section, the Court stated that "[t]he value of the interest of the decedent is not to be included unless it 'is subject to the payment of the charges against his estate and the expenses of its administration'—not one or the other, but both." *Id.* at 58, 51 S.Ct. 49 (quoting § 402 of the Internal Revenue Code of 1918). The Court explained:

> We find nothing in the context or in other provisions of the statute which warrants the conclusion that the word 'and' was used otherwise than in its ordinary sense; and to construe the clause as though it said, 'to the payment of charges and expenses, or either of them,' as petitioner seems to contend, would be to add a material element to

the requirement, and thereby to create, not to expound, a provision of law.

*Id.* Petitioner argued, however, that if the statute was read literally to operate in the conjunctive (as indicated above), it would lead to absurd results and, instead, a construction should be adopted "in harmony with what is thought to be the spirit and purpose of the act in order to give effect to the intent of Congress." *Id.* at 59, 51 S.Ct. 49.

The Court rejected petitioner's argument, noting that the literal terms of a statute should be disregarded on grounds of absurdity only "under rare and exceptional circumstances" and that "to justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense." *Id.* at 60, 51 S.Ct. 49. Moreover, the Court explained:

> Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. [citations omitted] It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good inten-

tion, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case, the remedy lies with the lawmaking authority, and not with the courts. [citations omitted].

*Id.*

Similarly, in the instant case, the statute at issue herein is worded in the conjunctive: in order to constitute "toll telephone service," a charge must vary with both distance and elapsed transmission time. Just as in *Crooks*, there is nothing in the context or in other provisions of § 4252 which warrants the conclusion that the word "and" was used otherwise than in its ordinary sense. Moreover, the Court finds that neither Revenue Ruling 79–404 nor defendant herein have offered a persuasive reason to treat this as a "rare and exceptional circumstance" which justifies departing from the plain language of the statute to find that both distance and time are not required for a service to constitute "toll telephone service."

Accordingly, based on the above, the Court finds that Revenue Ruling 79–404 does not possess the "power to persuade" as required by *Aeroquip–Vickers* and *Mead* and, thus, is entitled to no deference.[19]

### 3. Congressional Re-enactment

■ Defendant next argues that, since the publication of Revenue Ruling 79–404, Congress has re-enacted the federal communications excise tax imposed by § 4251 on several occasions, amending it to ex-

---

**19.** Even if this Court were to apply *Chevron* deference in the instant case, the Court would find that Revenue Ruling 79–404 is not entitled to deference because it conflicts with the plain and unambiguous language of § 4252(b)(1). *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778 (if Congress has left a gap for the agency to fill, court must uphold the adminis-

trative regulation unless it is "arbitrary, capricious, or manifestly contrary to the statute"). *See also, e.g., Peoples Federal Savings and Loan Ass'n of Sidney v. Commissioner of Internal Revenue,* 948 F.2d 289 (6th Cir.1991); *Defenders of Wildlife v. Browner,* 191 F.3d 1159 (9th Cir.1999).

tend the expiration of the tax and making various other changes. According to defendant's expert Mr. Vasington, several of these changes (specifically, amendments in 1990, 1997 and 1998) "were made during and after the time that distance was phased out as a factor in long-distance prices, and presumably Congress was aware of the changes in pricing plans and could have changed the definitions in the statute if there was any indication that the new pricing plans exempted long-distance traffic from the [federal excise tax]." (Vasington Decl. at ¶ 17). Accordingly, defendant maintains that Congress' re-enactment of the statute can be taken as approval by Congress of the IRS' interpretation of the scope of application of § 4252(b)(1).

Plaintiff argues that there is no evidence that Congress was aware of Revenue Ruling 79–404 and that, in the absence of any such evidence, Congressional re-enactment is not indicative of Congressional approval. In support of this argument, plaintiff notes that Revenue Ruling 79–404 has never been litigated in a reported decision so as to bring it to Congress' attention. Moreover, plaintiff maintains that there is no indication in the legislative history of subsequent amendments to §§ 4251 and 4252 to suggest that Congress was aware of the IRS' application of the excise tax at issue.

The Supreme Court has considered post-enactment developments in construing statutory language under certain circumstances. In *North Haven Bd. of Education v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), the Supreme Court noted that "[w]here 'an agency's statutory construction has been 'fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." (quoting *United States. v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979), quoting *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 489, 60 S.Ct. 982, 84 L.Ed. 1311 (1940)). Further, the Court has explained that an important consideration in the application of the re-enactment doctrine is "the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute." *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979). *See also Peoples Federal Savings & Loan Ass'n of Sidney,* 948 F.2d at 302–303 (finding that "[t]he re-enactment doctrine is merely an interpretive tool fashioned by the courts for their own use in construing legislation. It is most useful in situations where there is some indication that Congress noted or considered the regulations in effect at the time of its action").

In the instant case, there is no indication that Revenue Ruling 79–404 has been fully brought to the attention of Congress. Neither party cites any reported (or unreported, for that matter) court decision in which Revenue Ruling 79–404 has been litigated and, indeed, this Court's research has not uncovered any.[20] In addition, plaintiff asserts (and defendant does not contest) that the legislative history of subsequent amendments to §§ 4251 and 4252 does not reflect that this particular Ruling or the issue that that Ruling addresses was ever expressly considered by Congress.

---

**20.** There are other agency interpretive documents which address Rev. Ruling 79–404, including five IRS Technical Advice Memoranda, two Private Letter Rulings, and four General Counsel Memoranda. However, the Court finds that this smattering of agency documents is not sufficient to demonstrate that Rev. Ruling 79–404 has been fully brought to the attention of Congress.

Defendant, however, also relies upon *United States v. Cleveland Indians Baseball .Co.*, 532 U.S. 200, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001). In that case, the ·Supreme Court considered the application of Federal Insurance Contributions Act ("FICA") and Federal Unemployment Tax Act ("FUTA") taxes to payments of back wages. *Cleveland Indians Baseball Co.*, 532 U.S. at 204, 121 S.Ct. 1433. The central question presented was whether back wages should be taxed by reference to the year they were actually paid or, instead, by reference to the years they should have been paid. *Id.*

The IRS had long maintained regulations interpreting the FICA and FUTA tax provisions to mean that employer tax obligations attach "at the time that the wages are paid by the employer," rather than the time when the wages should have been paid. *Id.* at 219, 121 S.Ct. 1433. Although these regulations did not specifically address backpay, the IRS had consistently interpreted them in various revenue rulings to require taxation of back wages according to the year the wages were actually paid, rather than when those wages were earned or should have been paid. *Id.*

In deferring to the IRS' interpretation, the Court noted as follows:

> We need not decide whether the Revenue Rulings themselves are entitled to deference. In this case, the Rulings simply reflect the agency's longstanding interpretation of its own regulations. Because that interpretation is reasonable, it attracts substantial deference. *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). We do not resist according such deference in reviewing an agency's steady interpretation of its own 61–year–old regulation implementing a 62–year–old statute. 'Treasury regulations and interpretations long continued without substantial change, ap-plying to unamended or substantially re-enacted statutes, are deemed to have received congressional approval and have the effect of law.' *Cottage Savings Assn. v. Commissioner*, 499 U.S. 554, 561, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991) (citing [*United States v. Correll*, 389 U.S. 299, 305–306, 88 S.Ct. 445] (1967)).

*Id.* at 220, 121 S.Ct. 1433.

The Court finds that *Cleveland Indians Baseball Co.* is distinguishable from the instant case. In that case, the Court deferred to the IRS' longstanding interpretation of its own *regulations*, specifically finding that that interpretation was reasonable. Under those circumstances, the Court found that the agency's reasonable regulations (and by implication the revenue rulings interpreting those regulations in the context of backpay) were deemed to have received Congressional approval where the statutes to which they applied had been substantially reenacted.

In the instant case, however, defendant does not rely on Treasury Department regulations, which are promulgated after notice-and-comment procedures and would therefore be entitled to *Chevron* deference. Rather, defendant relies only on Revenue Ruling 79–404, which this Court has found to be an unreasonable interpretation of § 4252(b)(1) and not entitled to deference. In light of the above, and the absence of any indication that this Ruling was every fully brought to the attention of Congress, the Court finds that (1) *Cleveland Indians Baseball Co.* is distinguishable from the instant case and (2) Congressional approval can not be inferred from re-enactment of the statute at issue.

### *Conclusion*

Accordingly, for all of the reasons set forth above, the Court finds that the long-distance service at issue herein does not constitute "toll telephone service" under

**1006**

§ 4252(b)(1) because the charges for such service do not vary by distance.

## II    § 4252(b)(2)

■    As set forth *supra*, § 4252(b) also defines the term "toll telephone service" as "a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located." § 4252(b)(2).

Plaintiff argues that the long-distance service at issue herein does not fall within this definition of "toll telephone service" because the service does not permit plaintiff to make "unlimited calls" for a "flat amount" or "periodic charge." Rather, plaintiff argues that, under the contract terms for its service, plaintiff is charged an agreed-upon rate that varies and is determined by the duration of each individual call multiplied by the number of calls made. Plaintiff maintains that, unless plaintiff were to use the same number of minutes each and every month, its charges would not be a "flat amount." In addition, plaintiff maintains that the service at issue does not fall within § 4252(b)(2) for the additional reason that plaintiff is not permitted to select a specific geographic area within which all calls are subject to payment of a flat charge.[21]

Defendant argues that plaintiff does, in fact, pay a "periodic charge" because plaintiff pays a monthly bill. Next, defendant disagrees that the charge paid by plaintiff is not based on total elapsed transmission time because there is no mathematical difference between (1) multiplying the total minutes by the applicable rate and (2) multiplying the minutes of each individual call by the applicable rate and then adding all the charges together. Finally, defendant argues that plaintiff has failed to allege that the contract between plaintiff and MCI limits the usage of transmission time or number of calls that can be made per month.

The Court agrees with plaintiff. Under the plain language of the statute, to constitute "toll telephone service," the service must entitle the subscriber to unlimited calls within a specific geographic area for a periodic charge that is to be determined as a flat amount or upon the basis of total elapsed transmission time. This simply does not describe the long-distance service at issue in the instant case. The terms of the service herein do not entitle plaintiff to "unlimited calls" within "a specified geographic area;" rather, plaintiff must pay for each and every call and may call (and receive calls from) any location where MCI provides service. Moreover, the charge at issue is not determined as a "flat amount" or "upon the basis of total elapsed transmission time." Instead, plaintiff is charged an agreed-upon rate that varies in amount depending on the duration of the individual call and the number of calls. Based on the above, the Court finds that the long-distance service at issue herein

---

**21.**    Plaintiff also relies upon the legislative history of § 4252(b)(2) to support the argument that Congress intended to bring within the scope of this tax a service known as WATS (wide area telephone service), which is described as "a long-distance service whereby, for a flat charge, the subscriber is entitled to make unlimited calls." H.Rep. No. 89–433 at 35; S.Rep. No. 89–324 at 30. For the reasons set forth above, the Court need not address this argument as the service at issue does not fall within the plain meaning of § 4252(b)(2).

does not fall within the definition of "toll telephone service" set forth in § 4252(b)(2).

### III § 4252(a)

█ Finally, defendant argues, in the alternative, that the long-distance service at issue fits within the definition of "local telephone service" set forth in § 4252(a), which is also taxable at a 3% rate under § 4251. The term "local telephone service" is defined as follows:

> (a) **Local telephone service-** For purposes of this subchapter, the term "local telephone service" means-
>
> (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and
>
> (2) any facility or service provided in connection with a service described in paragraph (1).
>
> The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

26 U.S.C. § 4252(a).

The sole basis for defendant's argument is as follows: "Congress demonstrated an intent to tax all telephone service provided by common carriers except 'private communications service.' If plaintiff's argument is taken to its logical conclusion, and its service does not constitute 'toll telephone service' as defined by section 4252(b), then it constitutes local service within the meaning of section 4252(a)." (Defendant's Motion for Summary Judgment/Brief in Opposition at 21).

Defendant's argument is entirely unpersuasive. There is absolutely no basis upon which to find that the long-distance service at issue herein falls within the statutory definition of "local telephone service" and,

indeed, defendant does not even attempt to make that argument. Rather, defendant takes its congressional intent argument to its most extreme and essentially argues that, because Congress must have intended to tax the service at issue herein (an argument which is not supported by the legislative history), this Court should conclude that such service qualifies as "local telephone service" even though it meets not a single requirement of the statutory definition of that term. The Court finds defendant's argument to be without merit.

Accordingly, the Court finds that the long-distance service at issue herein does not constitute "local telephone service" under § 4252(a).

### Conclusion

Accordingly, for all the reasons set forth above, the Court finds that the long-distance service at issue herein does not constitute either "toll telephone service" or "local telephone service" under § 4252 and, thus, is not taxable under § 4251. The Court, therefore, GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

IT IS SO ORDERED.