**HONEYWELL INTERNATIONAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–1915 T.**

United States Court of Federal Claims.

Feb. 16, 2005.

David U. Fierst, Stein, Mitchell & Mezines, Henry D. Levine, Stephen J. Rosen, Levine, Blaszak, Block and Boothby, LLP, Washington, DC, for plaintiff. Bradley S. Waterman, Counsel for Honeywell International, Inc., of counsel.

G. Robson Stewart, Trial Attorney, Eileen J. O'Connor, Assistant Attorney General, David Gustafson, Assistant Chief, Court of Federal Claims Section, United States Department of Justice, Washington, DC, for defendant. Robert J. Higgins, Reviewer, of counsel.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on plaintiff's motion for summary judgment on liability and defendant's cross-motion for summary judgment on liability. For the reasons set forth below, plaintiff's motion is GRANTED and defendant's cross-motion is DENIED.

### BACKGROUND

#### I. Facts

Plaintiff, Honeywell International ("Honeywell"), is a Delaware corporation whose corporate headquarters and principal place of business are located in Morristown, New Jersey. From October 1, 1998 through March 31, 2003, Honeywell and its predecessors and former subsidiaries [1] purchased intrastate, interstate, and international long distance telephone service from various carriers, including AT & T, MCI, and Sprint (collectively "the carriers"). With the exception of calls made to Mexico, the carriers' charges for that service (collectively "the Honeywell service") were always based on the duration of each call, i.e., the "elapsed transmission time of each individual communication." Certain charges differed based on the type of access (dedicate or switched) or the time of day during which the call was made. Distance, however, was not a factor in determining the charges for such services. The charges for the Honeywell service were "postalized," a term used to describe rates (like the cost of mailing a letter) that do not vary with the distance a message travels. There are distinctions in cost, however, based on whether the call was interstate, intrastate, or international. Because they are billed on an individual, call-by-call basis, and Honeywell can call anywhere in the world served by the carriers, Honeywell services are not pro-

1. Honeywell International's predecessors and former subsidiaries are Allied Signal, Inc., Honeywell, Inc., Pittway Corporation, Ademco Distribution, Inc., and Fire–Lite Alarms, Inc. Pl.'s Br. in Supp. of its Mot. for Summ. J. ("Pl.'s Br.") at 3.

vided under a regime pursuant to which Honeywell can make an unlimited number of calls within a specified geographic region for a flat or periodic fee.

The carriers collected federal excise taxes on the Honeywell services from Honeywell and its predecessors and former subsidiaries. In accordance with its legal obligations, AT & T remitted the taxes to the Internal Revenue Service ("IRS") and reported the taxes paid each quarter on Forms 720. MCI and Sprint were similarly obligated to remit the collected taxes to the Government and file Forms 720 with the IRS. On February 28, 2002, Honeywell International timely filed claims for refund of a portion of the amount sought in this action, representing an estimate of the amount of taxes paid by Honeywell International with respect to the taxable quarters ended December 31, 1998 through September 30, 2001. On June 12, 2002, Honeywell International supplemented its claims by providing the IRS with the exact amount of tax, $1,251,650.25, paid with respect to the taxable quarters ended December 31, 1998 through September 30, 2001. The IRS received the claims on June 17, 2002 and to date has not responded to them.

On February 28, 2002, Honeywell Inc. timely filed claims for refund with the IRS for $366,956.51 of the amount sought in this action, representing the aggregate amount of taxes paid by Honeywell Inc. with respect to the taxable quarters ended December 31, 1998 through September 30, 2001. The IRS received those claims on March 4, 2002 and to date has not responded to them. On May 29, 2002, Pittway Corporation timely filed claims for refund with the IRS for $138,656.45 of the amount sought in this action, representing the aggregate amount of taxes paid by Pittway Corporation with respect to the taxable quarters ended March 31, 1999 through December 31, 2001. The IRS received these claims on May 31, 2002 and to date has not responded to them.

On May 31, 2002, Ademco Distribution, Inc. timely filed claims for refund with the IRS for $128,922.49 of the amount sought in this action, representing the aggregate amount of taxes paid by Ademco with respect to the taxable quarters ended March 31, 1999 through December 31, 2001. The IRS received these claims on June 4, 2002 and to date has not responded to them. On June 4, 2002, Fire–Lite Alarms, Inc. timely filed claims for refund with the IRS for $43,811.19 of the amount sought in this action, representing the aggregate amount of taxes paid by Fire–Lite with respect to the taxable quarters ended March 31, 1999 through December 31, 2001. The IRS received these claims on June 7, 2002 and to date has not responded to them.

On June 25, 2003, Honeywell International timely filed claims for refund with the IRS for an additional portion of the amount sought in this action, and on August 14, 2003, Honeywell International timely supplemented its claims by providing the IRS with the properly calculated amount of tax, $427,640.67, paid with respect to the taxable quarters ended March 31, 2002 through March 31, 2003. The IRS received these claims on August 19, 2003 and to date has not responded to them.

On August 7, 2003, Honeywell filed a complaint in this Court seeking a refund of federal excise taxes paid by Honeywell International and its predecessors and former subsidiaries on the Honeywell services during the quarter ended December 31, 1998 through the quarter ended December 31, 2001. On April 8, 2004, plaintiff filed a First Amended Complaint seeking a refund of federal excise taxes paid on the Honeywell services during the quarter ended December 31, 1998 through the quarter ended March 31, 2003.

## II. Statutes at Issue

### A. 26 U.S.C. § 4251

(a) Tax imposed.

(1) In general. There is hereby imposed on amounts paid for communications services a tax equal to the applicable percentage of amounts so paid.

(2) Payment of tax. The tax imposed by this section shall be paid by the person paying for such services.

(b) Definitions. For purposes of subsection (a)—

(1) Communications services. The term "communications services" means—

(A) local telephone service;

(B) toll telephone service; and

(C) teletypewriter exchange service

(2) Applicable percentage. The term "applicable percentage" means 3 percent.

### B. 26 U.S.C. § 4252

(a) Local telephone service. For purposes of this subchapter, the term 'local telephone service' means—

(1) the access to a local telephone system, and the privilege of telephone quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and

(2) any facility or service provided in connection with a service described in paragraph (1).

The term 'local telephone service' does not include any service which is a 'toll telephone service' or a 'private communication service' as defined in subsections (b) and (d).

(b) Toll telephone service. For purposes of this subchapter, the term 'toll telephone service' means—

(1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and

(2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system

area in which the station provided with this service is located.

### III. The Other Cases

*"Everything that needs to be said has been said, but everybody hasn't said it."*

Mo Udall [2]

The questions presented in this case have been actively litigated in the federal courts throughout the country during the last year. The parties' arguments are almost identical in each of the cases. Of the five previous decisions issued, four have resolved the matter in favor of the plaintiffs, while only one has ruled for the Government. Since none of the decisions were issued by the United States Supreme Court or the Court of Appeals for the Federal Circuit, they are persuasive authority only, and are not binding on this Court. For the reasons set forth below, however, we agree with the decisions of the courts in *Office Max, Inc. v. United States*, 309 F.Supp.2d 984 (N.D.Ohio 2004), *Fortis, Inc. v. United States*, No. 03 Civ. 5137(JGK), 2004 WL 2085528 (S.D.N.Y. Sept.16, 2004), *National Railroad Passenger Corp. ("Amtrak") v. United States*, 338 F.Supp.2d 22 (D.D.C.2004), and *Reese Bros. v. United States*, No. 03–CV–745, 2004 WL 2901579 (W.D.Pa. Nov.30, 2004), and adopt the well-reasoned analyses and conclusions contained in those opinions. We respectfully disagree with the decision of the Southern District of Florida in *American Bankers Insurance Group, Inc. v. United States*, 308 F.Supp.2d 1360 (S.D.Fla.2004) (*"ABIG"*).

### A. *American Bankers Insurance Group, Inc. v. United States*

American Bankers Insurance Group, Inc. ("ABIG") purchased from AT & T interstate and international long-distance telephone service and intrastate long-distance telephone service in the states of Florida, Georgia, Michigan, Ohio, and Oklahoma during the period from October 1, 1998 though March 31, 2002. 308 F.Supp.2d at 1362. Under the relevant contracts, or tariffs,

**2.** Michael J. Gerhardt, *The Special Constitutional Structure of the Federal Impeachment Process,* 63 Law & Contemp. Probs. 245 (2000) (citing *The Cost Implications and Benefits to the United States of the Proposed First Round of NATO Expansion: Hearing Before the S. Appropriations Comm.,* 105th Cong. 13 (1997) (statement of Sen. Dale Bumpers)(quoting Mo Udall)).

ABIG paid a uniform toll rate for all interstate calls made within the United States, uniform toll rates for all intrastate long-distance calls made within the five states noted above, and toll rates for international calls (except for calls to and from Mexico) that varied only according to which country the calls were being placed. *Id.* AT & T collected federal excise taxes on all these services and remitted them to the Internal Revenue Service ("IRS"). *Id.* ABIG filed two claims for refund, contending that the applicable federal law does not impose an excise tax on long-distance telephone calls that do not vary in rate based on the distance of the telephone call. *Id.*

In a January 2004 decision, the district court granted summary judgment in favor of the Government. The cornerstone of its ruling was its conclusion that the use of the word "and" in the phrase "distance and elapsed transmission time" is ambiguous. *Id.* at 1364. The court professed that "it is the duty of the court to ascertain the clear intention of the legislature," and in so doing "courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.' " *Id.* (quoting *United States v. Fisk,* 70 U.S. (3 Wall.) 445, 447, 18 L.Ed. 243 (1865)). The court then observed that the word "and" has many different meanings and usages depending on its context, and can be used either in the conjunctive sense to mean "and" or in the cumulative sense to mean "either or both of two alternatives." *Id.* at 1364–65; *Office Max,* 309 F.Supp.2d at 995 (discussing the decision in *ABIG*). The court determined that "this alternative interpretation of 'and' as 'or' is supported by the dictionary definition, by Congress's use of the word in § 4252(b)(1), and by the use of 'and' in other portions of the statute." *ABIG,* 308 F.Supp.2d at 1366.

Based on the above analysis, the court concluded that the definition of "toll telephone service" in section 4252(b)(1) was ambiguous and proceeded to consider evidence of congressional intent, including the legislative history, the purpose of the Excise Tax Reduction Act of 1965, and the context of that Act's enactment. *Id.* at 1366–70; *Office Max,* 309 F.Supp.2d at 994.

The *ABIG* court addressed the issue of how much deference should be accorded to Revenue Ruling 79–404, 1979 WL 51192. In Revenue Ruling 79–404, the IRS acknowledged that the service at issue in that case (service between ships at sea and telephones in the United States) did not come within the literal definition of "toll telephone service" because the charge for the service did not vary with distance. *Rev. Rul.* 79–404, 1979–2 C.B. 382; *ABIG,* 308 F.Supp.2d at 1370. The IRS nonetheless found that the service was taxable because it believed that the legislative history of the Excise Tax Reduction Act of 1965 indicated that the service was within the "intended scope" of taxable "toll telephone service" under § 4252(b)(1). *Office Max,* 309 F.Supp.2d at 996.

Citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), and *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), the court recognized that the Ruling was not necessarily entitled to *Chevron*-level deference, but was certainly entitled "to as much weight as its persuasiveness allows, much like a decision from a different circuit can be persuasive but is not binding on this Court." *ABIG,* 308 F.Supp.2d. at 1371. The court "afford[ed] the Ruling great weight because it expresses a longstanding IRS interpretation of § 4252(b)(1), it is entirely reasonable, and it is consistent with the intent of Congress to tax commercial long-distance telephone services." *Id.* at 1372. The court tangentially addressed the issue of congressional re-enactment. *Id.* at 1372–73. The court found that it did not need to fully resolve that dispute: "[w]hether or not subsequent Congresses were aware of Revenue Ruling 79–404, these Congresses clearly understood §§ 4251 and 4252 to impose a tax on all commercial long-distance service, not just service where the toll rate actually varied by both distance and time." *Id.* at 1373.

The court then concluded that "the statutory language of 26 U.S.C. § 4252(b)(1) is ambiguous and that the clear intent of Congress from before the 1965 amendment up to the

present day has been to tax all long-distance telephone service, regardless of whether the toll rate for that service varied only by distance, only by elapsed time, or by both." *Id.* In so finding, the court granted defendant's cross-motion for summary judgment and denied plaintiff's motion for summary judgment.

### B. *OfficeMax v. United States*

During the quarter ending March 31, 1999 through the quarter ending December 31, 2002, plaintiff OfficeMax purchased intrastate, interstate, and international long-distance telephone services from MCI. 309 F.Supp.2d at 986. Apparently believing that these services constituted taxable long-distance service under the Internal Revenue Code, MCI collected federal excise tax from OfficeMax in the amount of $380,296.72 and remitted the taxes to the IRS. *Id.* at 986–87. Plaintiff filed two claims for refund with the IRS, asserting that with the exception of certain calls to Mexico, MCI's charges for the long-distance telephone services it provided to OfficeMax were always based on the duration of each individual call, the type of access provided (dedicated or switched), or the time of day in which the call was made. *Id.* at 987. Plaintiff claimed that distance was never a factor in determining the charges for these services. *Id.* As such, plaintiff claimed that these "non-distance sensitive services" did not constitute taxable long-distance services under sections 4251 and 4252 of the Internal Revenue Code. *Id.* The IRS disagreed and refused to refund plaintiff's alleged overpayment. *Id.*

The matter was before the court on cross-motions for summary judgment. *Id.* Plaintiff argued that the long-distance telephone service provided to it by MCI for the years 1999–2002 did not constitute "toll telephone service" as defined in section 4252 because "(1) the charges imposed on the service at issue did not vary with distance as required by the plain language of § 4252(b)(1); and (2) the service at issue was not flat-rated for unlimited usage as required by § 4252(b)(2)." *Id.* at 988–89.

Defendant argued principally that the long-distance telephone service at issue does constitute "toll telephone service" under section 4252(b)(1), relying heavily on the IRS's Revenue Ruling 79–404, which interprets that statute to mean that a charge need not vary by distance but only by elapsed transmission time. *Id.* at 989. Alternatively, defendant argued that plaintiff's services were taxable as either (1) unlimited communications within a specified area under section 4252(b)(2) or (2) "local telephone service" under section 4252(a). *Id.*

The court first looked at the plain language of section 4252(b)(1). 309 F.Supp.2d. at 993. As discussed *infra* at Part III.A., the court concluded that the language in the statute was unambiguous, and that the term "and" in the phrase "distance and elapsed transmission time of each individual communication" can be read only in the conjunctive. *Id.* at 995. Thus, in order to fall within the definition of "toll telephone service" set forth in section 4252(b)(1), "a charge must vary by both distance and elapsed transmission time, not by one or the other." *Id.* The court noted and discussed the decision in *ABIG*, 308 F.Supp.2d 1360, but was not persuaded by the decision in that case and ultimately "respectfully disagree[d] with the conclusion of the *ABIG* court that the phrase 'distance and elapsed transmission time' is ambiguous." *Id.* at 995. In its analysis, the court also stated that because the language was unambiguous, it did not need to look at the legislative history in order to interpret the statute. *Id.* at 995 n. 14. But, even if the court were to consider the legislative history, that history would support the court's interpretation of section 4252(b)(1). *Id.*

The court then addressed defendant's contention that the charges did vary by distance because MCI's charges were based on whether the call was interstate, intrastate or international. *Id.* at 995. As discussed further *infra* at Part III.D., the court dismissed this argument, finding that the distinction between interstate, intrastate, and international was a geopolitical distinction not related to distance. *Id.* at 996.

Next, the court discussed defendant's argument that the long-distance service at issue constituted "toll telephone service" under the rationale set forth in Revenue Ruling 79–

404. *Id.* First, the court reviewed the level of deference normally accorded Revenue Rulings. As discussed *infra* at Part III.C., in analyzing *Chevron, Christensen,* and *Mead,* as well as the Sixth Circuit decision in *Aeroquip–Vickers, Inc. v. Commissioner,* 347 F.3d 173 (6th Cir.2003), the court concluded that it would "not accord *Chevron* deference to Revenue Ruling 79–404 but, rather, [would] determine the appropriate level of deference to be accorded depending on the Ruling's 'power to persuade,' *i.e.,* the validity and thoroughness of its reasoning and its consistency with earlier and later pronouncements." 309 F.Supp.2d at 998. The court then reviewed the reasoning of Revenue Ruling 79–404, including the case law and legislative history upon which that ruling purported to rely. After a lengthy analysis, the court concluded that "Revenue Ruling 79–404 does not possess the 'power to persuade' as required by *Aeroquip–Vickers* and *Mead* and, thus, is entitled to no deference." *Id.* at 1003.

The court also addressed defendant's argument that since the publication of Revenue Ruling 79–404, Congress has re-enacted the federal communications excise tax imposed by section 4251 on several occasions but has not changed the language at issue, thus evidencing congressional approval of the IRS' interpretation of the scope of application of section 4252(b)(1). *Id.* at 1003–04. The court looked to the relevant Supreme Court case law on this issue, and concluded that re-enactment was not evidence of Congressional approval in this case because there was "no indication that Revenue Ruling 79–404 has been fully brought to the attention of Congress." *Id.* at 1004.

The court then dispensed with defendant's remaining contentions that plaintiff's services were taxable as either (1) unlimited communications within a specified area under section 4252(b)(2) or (2) "local telephone service" under section 4252(a).

The court first found that under the plain language of section 4252(b)(2), to constitute "toll telephone service," the service must entitle the subscriber to unlimited calls within a specific geographic area for a periodic charge that is to be determined as a flat amount or

upon the basis of total elapsed transmission time. *Id.* That "simply does not describe the long-distance service at issue in the instant case." *Id.* Plaintiff's plan required it to pay for each and every outgoing call to, and calls received from, any location where MCI provided service. Additionally, plaintiff was charged an agreed-upon rate that varied in amount depending on the duration of the individual call and the number of calls. Thus, the long distance service at issue did not fall within the definition of "toll telephone service" set forth in section 4252(b)(2). *Id.* at 1006–1007.

Lastly, the court found that there was "absolutely no basis upon which to find that the long-distance service at issue herein falls within the statutory definition of 'local telephone service.' " *Id.* at 1007.

### C. *Fortis, Inc. v. United States*

The plaintiff, Fortis, Inc. ("Fortis"), brought an action to obtain a refund from the IRS of excise taxes that Fortis had remitted for certain long-distance telephone service. 2004 WL 2085528 at *1. The primary issue was whether the definition of taxable "toll telephone service" in 26 U.S.C. § 4252(b)(1) includes long-distance service where charges are based on the elapsed transmission time of a call but not the distance the call travels. *Id.* Plaintiff filed a motion for summary judgment. *Id.* Defendant opposed the motion and filed a cross-motion for summary judgment, arguing that the telephone service at issue falls within the definition of 26 U.S.C. § 4252(b)(1), or, in the alternative, falls within the other definitions of taxable telephone services in § 4252. *Id.*

Under the rate schedules applicable to Fortis's long distance service, with the exception of calls made to and from Mexico, the charge for each call was based on the call's duration, or elapsed time. *Id.* at *2. The cost of a call was independent of the distance the call traveled. *Id.* AT & T collected from Fortis federal excise taxes on the services provided to Fortis and was legally obligated to remit those taxes to the IRS and report the taxes paid each quarter. *Id.*

The court first examined the history of federal excise tax on various telecommunications services. 2004 WL 2085528 at *3. The court noted that at the time of the 1965 amendment, AT & T was the dominant long-distance carrier in the United States, and the definition of "toll telephone service" covered AT & T's two types of long-distance service: (1) "Message Telephone Service" ("MTS") charged callers for each call based on the time of day, duration of the call, and the distance traveled [measured in terms of mileage bands]; and (2) "Wide Area Telephone Service" ("WATS") generally allowed subscribers, for a flat charge, to make unlimited calls within a defined area, sometimes limited as to the total elapsed time. *Id.* The court also explained that between 1997 and 2000, however, AT & T and other long-distance carriers began to abandon the mileage-band system, due in part to competition with wireless carriers. *Id.*

The court next discussed the decisions in *ABIG, id.* at *4–5, and *Office Max, id.* at *5, and stated that the arguments raised in those cases were substantially the same as in the motions pending before it.

Looking first at the proper interpretation of section 4252(b)(1), the court considered and rejected the reasoning of the *ABIG* court, and "agree[d] with the *Office Max* court that the provision is plain: the amount of the toll charge must depend on both the distance and the elapsed time of the call." *Id.* at *6. The Court then acknowledged that the plain meaning may still be set aside if it would lead to "absurd or futile results" or was plainly inconsistent with the purpose of the legislation as a whole. *Id.* at *7. The court then engaged in a thorough analysis of the legislative history, *id.* at *7–8, and concluded that the legislative history is consistent with the plain reading of the statute:

> Indeed, the clearest lesson of the legislative history is that Congress, in referring to charges that vary "in amount with the distance and elapsed transmission time of each individual communication," meant precisely what it said: it intended to tax the AT & T MTS service that varied based on mileage and call duration. This is not a case where Congress inartfully chose the

words to effectuate its intent or where the plain meaning has produced absurd or futile results. Congress in 1965 chose the words necessary to tax long-distance service at the time, and in fact, the words of § 4252(b), in their literal form, were sufficient to tax virtually all long-distance service for the next thirty to thirty-five years.

*Id.* at *9. The court continued that "recent emergence of service that falls outside of the current definition does not justify abandoning the statute's plain and original meaning. Updating the statute is not the Court's role." *Id.*

Like *Office Max,* the *Fortis* court next addressed the proper deference to be accorded to Revenue Ruling 79–404. After briefly discussing the impact of *Christensen* and *Mead* on *Chevron* deference, 2004 WL 2085528 at *10, the court concluded that "[i]n any event, even under the more deferential standard, Revenue Ruling 79–404 is not entitled to deference because it is inconsistent with the unambiguous definition of toll telephone service in § 4252(b)(1)." *Id.* at *11. The *Fortis* court was also unpersuaded by the "re-enactment doctrine" argument advanced by defendant. *Id.* at *11–12.

Additionally, the court rejected the notion that Fortis's toll telephone service varied by distance because rates may vary depending on whether the call was intrastate, interstate, or international. *Id.* at *13. The court, as in *Office Max,* found that "the jurisdictional classifications employed in the long distance service at issue [did] not amount to service where charges vary in amount with distance and thus [did] not place the service within section 4525(b)(1)'s definition of toll telephone service." *Id.* (citing *Office Max,* 309 F.Supp.2d at 996).

The court lastly determined that these charges were not flat-rate charges as contemplated by section 4252(b)(2), *id.* at *13–14, nor local telephone services as defined in section 4252(a), *id.* at *15.

### D. *National Railroad Passenger Corp. v. United States*

Plaintiff, National Railroad Passenger Corp. ("Amtrak"), asserted that it was enti-

tled to a refund of $86,103.28 on the grounds that the telecommunications services in question fit within the scope of section 4252(b)(2) and that the amounts paid for them are exempt from taxation under section 4253(f).[3] 338 F.Supp.2d at 25. The IRS contended that these services were taxable as "a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance *and* elapsed transmission time of each individual communication[,]" 26 U.S.C. § 4252(b)(1), despite the fact that none of the charges for Amtrak's telecommunications services varied by distance. *Id.* As in the above-described cases, the IRS relied on legislative history that purportedly evinces Congress's desire to tax all individually-charged long-distance calls as well as Revenue Ruling 79–404. *Id.* at 25–26. Again, the IRS argued in the alternative that, if Amtrak's telecommunications services are not long-distance "toll" calls, then they should be taxed as local telephone service under section 4252(a). *Id.* at 26.

Undertaking the same analysis discussed above in *Office Max* and *Fortis*, the court found that the language of the statute was unambiguous, and that "Congress clearly meant for 'and' to be read in the conjunctive in § 4252(b)(1)(A)." *Id.* at 27. "In this case . . ., the plain language of § 4252(b)(1) accurately conveys what Congress sought to achieve in 1965." *Id.* Furthermore, the court had "no doubt that Congress specifically intended to use 'and' rather than 'or' in § 4252(b)(1)(A) to reflect the technology of the day. This is not an instance in which the legislature was imprecise or mistakenly selected the wrong word." *Id.* The court further noted that it was "unpersuaded by the reasoning in Revenue Ruling 79–404, which cannot overrule a clear statutory requirement." *Id.* at 28 n. 6. Having found that "Congress meant what it plainly said in 1965, the Court conclude[d] that only Congress, and not the IRS on its own, may update the statutory text." *Id.* at 23.

### E. *Reese Brothers, Inc. v. United States* (W.D.Pa.)

Plaintiff, Reese Brothers, Inc. ("Reese"), filed an action seeking reimbursement of fed-

eral excise tax in the amount of $345,351.53, it claimed it overpaid to the Government. 2004 WL 2901579 at *1. From July 1, 1998 through March 31, 2002, Reese purchased intrastate and interstate long distance voice service from LCI International Telecom Corp. ("LCI"), Qwest Communications Corporation ("Qwest"), and MCI. *Id.* LCI, Qwest, and MCI collected federal excise tax on these various services and remitted them to the IRS. *Id.* Reese filed two claims for refund with the IRS in which Reese claimed it was entitled to the refund because it was not charged for the services based on the distance of the telephone calls, and thus, the services were not subject to the federal excise tax. *Id.*

The matter was before the court on cross-motions for summary judgment. *Id.* Faced with the same arguments at issue in *ABIG, Office Max, Fortis,* and *Amtrak,* the *Reese* court (adopting the report and recommendation of the magistrate judge), in a thorough and well-reasoned decision, resolved the dispute in favor of plaintiff in the same manner as the courts in *Office Max, Fortis* and *Amtrak.*

## DISCUSSION

### I. Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant for summary judgment bears the burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477

---

**3.** "Section 4253(f) exempts from taxation under § 4251 the amount paid for use by a common carrier of any toll telephone service described in § 4252(b)(2)." 338 F.Supp.2d at 28.

U.S. at 325, 106 S.Ct. 2548. The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Northrop Grumman Corp. v. United States,* 50 Fed.Cl. 443, 457 (2001) (citing *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988)). It does not necessarily follow that if one motion is rejected, the other is supported. *Prineville,* 859 F.2d at 911. The court must evaluate each party's motion on its own merits and resolve all reasonable inferences against the party whose motion is under consideration. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992). In the case at bar, the parties have agreed that there are no genuine issues of material fact and have asked the Court to resolve an issue of statutory interpretation, which is a question of law, *Kent v. Principi,* 389 F.3d 1380, 1384 (Fed.Cir.2004) (citing *Lane v. Principi,* 339 F.3d 1331, 1339 (Fed.Cir.2003)). Thus, summary judgment is appropriate in this case.

## II. Statutory Interpretation

■ Statutory interpretation begins with the language of the statute. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). When interpreting a statute, the Court "give[s] the words of a statute their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." *Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (quoting *Walters v. Metropolitan Educ. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997)). "We must first 'determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Clary v. United States,* 333 F.3d 1345, 1348 (Fed.Cir.2003) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). If the statute is unambiguous, the court's inquiry ends; the court must enforce the congressional intent embodied in that plain wording. *Chamberlain Group, Inc. v. Skylink Techs., Inc.,* 381 F.3d 1178, 1192 (Fed.Cir.2004) (citing *United States v. Clark,* 454 U.S. 555, 560, 102 S.Ct. 805, 70 L.Ed.2d 768 (1982)). " 'Policy consid-

erations cannot override our interpretation of the text and structure of [a statute], except to the extent that they may help to show that adherence to the text and structure would lead to a result so bizarre that Congress could not have intended it.' " *Id.* (quoting *Cent. Bank, N.A. v. First Interstate Bank, N.A.,* 511 U.S. 164, 188, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)).

## III. The Plain Reading of Section 4252(b)(1) is that "And" is Conjunctive

### A. The Language is Not Ambiguous

■ The central issue in this case is the proper interpretation of the language in section 4252(b)(1). Like the plaintiff in *Office Max,* Honeywell contends that the statute's express use of the words "distance and elapsed transmission time" means that a charge must vary by both distance and time in order to fall within the definition of "toll telephone service." Plaintiff insists that the language is clear and unambiguous; by using the word "distance" in the conjunctive with "elapsed transmission time," the statute clearly provides that distance must be a factor in determining the charge in order for the service to constitute a taxable "toll telephone service." Pl.'s Br. at 22–27. Plaintiff maintains that, because the charges applied to it are not "distance-sensitive," they do not fall within the plain and unambiguous language of section 4252(b)(1). *Id.* at 15.

As in *Office Max,* defendant maintains that, on its face, the language of the statute does not require a variation in distance *per se.* 309 F.Supp.2d at 993. Rather, the statute only requires that the calculation of the charge must include a "distance toll rate" in order to satisfy the distance component of the statute. According to defendant, neither the distance of the individual call nor the distance toll rate applied to the call need vary with each individual communication. Rather, only the product of the distance toll rate times the elapsed transmission time must vary in order to fall within the language of the statute. *Id.*; Def.'s Cross–Mot. at 15–20 ("Plaintiff's argument is flawed because it misconstrues § 4252(b)(1) by failing to recog-

nize that its requirement of variation applies to the charge itself—it does not require a direct variation with the actual measured distance of the call"). Because the charges for the service herein vary in terms of the product of distance toll rate times elapsed transmission time, defendant maintains the long-distance service at issue constitutes "toll telephone service," and is, therefore, taxable. Def.'s Cross–Mot. at 15–20.

In the alternative, defendant contends that the language of section 4252 is ambiguous. *Id.* at 16–17, 18, 33–36. As support for this argument, defendant relies on the decision of the Southern District of Florida in *ABIG.* There, the court engaged in a lengthy recitation of how the conjunctive "and" in the context of section 4252 may actually mean "or." 308 F.Supp.2d at 1364–66. The courts in *Office Max, Amtrak, Fortis,* and *Reese* have all considered this argument, and, despite the court's decision in *ABIG,* determined that the language of section 4252 is unambiguous. *Office Max,* 309 F.Supp.2d at 994–95; *Amtrak,* 338 F.Supp.2d at 27; *Fortis,* 2004 WL 2085528 at *6; *Reese,* 2004 WL 2901579 at *3, 7. For the reasons set forth by the courts in *Office Max, Amtrak, Fortis,* and *Reese,* we are likewise persuaded that the language of section 4252 is unambiguous.

■ Having determined that the language is unambiguous, we must now turn to the issue of whose interpretation is correct. "While the Court recognizes that the word 'and' can have different meanings and can be used cumulatively in certain circumstances, it does not believe that the use of the word 'and' in the phrase 'distance and elapsed transmission time' can be read other than in the conjunctive." *Office Max,* 309 F.Supp.2d at 995. "The Court believes its conclusion on this issue is particularly supported by the fact that both distance and time were, in fact, factors in determining charges for toll telephone service at the time of the 1965 amendments." *Id.; see* Def.'s Cross–Mot. at 18. "Thus, in this context, it is only logical to conclude that when Congress wrote the phrase 'distance and elapsed transmission time,' it meant for the word 'and' to be read conjunctively to mean that a charge must vary by both distance and elapsed transmis-

sion time, and not by one or the other." *Office Max,* 309 F.Supp.2d at 995; *see Fortis,* 2004 WL 2085528 at *6; *Amtrak,* 338 F.Supp.2d at 27; *Reese,* 2004 WL 2901579 at *7 ("Thus, in our view, it is clear from the plain language of the statute that Congress intended to impose the tax on calls charged based on both distance and duration."). While it may have been short-sighted of Congress to define "toll telephone service" to specifically address the charging scheme used by AT & T in 1965, *Amtrak,* 338 F.Supp.2d at 27, " '[i]t is beyond our province to rescue Congress from its drafting errors and to provide for what we think ... is the preferred result.' " *Lamie v. United States Tr.,* 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *United States v. Granderson,* 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (Kennedy, J., concurring)).

**B. The Legislative History Supports Conclusion that Congress Meant to Use "And" Conjunctively**

■ The Government argues that the legislative history supports its reading of the statute, and that the interpretation urged by the plaintiff leads to an absurd result. Def.'s Cross–Mot. at 21–27. All of defendant's arguments on this issue have been addressed and rejected by the courts in *Office Max,* 309 F.Supp.2d at 999–1001, 995 n. 14, and *Fortis,* 2004 WL 2085528 at *9. In both of those cases, the courts thoroughly examined the legislative history and determined that Congress intended "and" in section 4252 to be read as a conjunction.

In *Office Max,* the Court explained:
Because this Court finds that the statutory language is not ambiguous, it therefore finds that it is not necessary or appropriate to consider the Act's legislative history or other extrinsic evidence of congressional intent. However, as discussed at length *supra,* even if it were to consider the legislative history, this Court does not believe that that history clearly indicates that Congress intended to encompass long-distance service for which the charge does not vary by distance within the definition of "toll telephone service." Moreover, the

Court does not believe that the definition of this term must be construed in the manner advocated by defendant in order to avoid an absurd result.

309 F.Supp.2d at 995 n. 14; *see also Amtrak,* 338 F.Supp.2d at 27–28 (legislative history confirms that Congress intended "and" to be used conjunctively); *Reese,* 2004 WL 2901579 at \*7–9 (same). The court also found that "[t]he legislative history makes clear that Congress took the broad definition of 'toll telephone service' in § 4252(b)(1) and expressly modified it to include the additional requirements that charge vary by distance and time." *Office Max,* 309 F.Supp.2d at 1000. Furthermore, "[t]he Court must presume that Congress meant what it said when it tailored the definition of taxable 'toll telephone service' to include distance and time requirements, particularly in light of the overall goal of the Act to reduce and restrict the application of federal excise taxes." *Id.* The court in *Fortis* reached the same conclusion: "[t]he plain meaning of § 4252(b)(1) is not absurd or unreasonable, and the broad intent asserted by the Government is not clearly indicated by the statute's language, its legislative history, or the context of its enactment." 2004 WL 2085528 at \*10.

The parties in the case at bar presented no arguments on this issue that have not been previously considered by these other courts. This Court agrees with the decisions and supporting analyses in *Office Max, Fortis, Amtrak,* and *Reese,* and adopts the opinions of those courts regarding the significance of the legislative history.

### C. The Court Declines to Give Substantial Deference to Revenue Ruling 79–404

■ Defendant next argues that this Court should find that the long-distance service at issue nevertheless constitutes "toll telephone service" under the rationale set forth in Revenue Ruling 79–404. In Revenue Ruling 79–404, the IRS acknowledged that the service at issue in that case (service between ships at sea and telephones in the United States) did not come within the literal definition of "toll telephone service" because the charge for the service did not vary with

distance. *Office Max,* 309 F.Supp.2d at 996. The IRS nonetheless found that the service was taxable because it believed that the legislative history of the Excise Tax Reduction Act of 1965 indicated that the service was within the "intended scope" of taxable "toll telephone service" under § 4252(b)(1). *Id.*

Since its release in 1979, Revenue Ruling 79–404 has been interpreted by the IRS to stand for the general proposition that a long-distance telephone call for which the charge varies with elapsed transmission time but not with distance constitutes taxable "toll telephone service." *Id.* As in *Office Max,* defendant maintains in the instant case that this Court should give substantial deference to the reasoning and conclusion set forth in Revenue Ruling 79–404 and apply it in the instant case to find that the long-distance service at issue is "toll telephone service" as set forth in § 4252(b)(1).

Both *Office Max,* 309 F.Supp.2d at 996–1006, and *Fortis,* 2004 WL 2085528 at \*10–13, thoroughly and completely address the issue of deference due Revenue Ruling 79–404. The courts discussed the traditional deference due under *Chevron,* 467 U.S. 837, 104 S.Ct. 2778, as well as the less deferential standard set forth in *Christensen,* 529 U.S. 576, 120 S.Ct. 1655, and *Mead,* 533 U.S. 218, 121 S.Ct. 2164. *Office Max,* at 997–99; *Fortis,* 2004 WL 2085528 at \*10. The court in *Fortis* noted that "even under the more deferential standard [of *Chevron*], Revenue Ruling 79–404 is not entitled to deference because it is inconsistent with the unambiguous definition of toll telephone service in § 4252(b)(1)." 2004 WL 2085528 at \*11. Further, the *Office Max* court found that "the reasoning set forth in Revenue Rule 79–404 is not reasonable and, therefore, entitled to no deference." 309 F.Supp.2d at 999. This Court has nothing to add to the well-reasoned and articulate decisions on this issue in *Office Max, Fortis,* and *Reese,* 2004 WL 2901579 at \*9–12, and adopts the conclusions and analyses set forth on this issue in those cases.

■ The courts have also addressed and rejected the Government's argument that congressional re-enactment of § 4252 in light of Revenue Ruling 79–404, "serves to indi-

cate congressional ratification of the IRS's interpretation represented by Revenue Ruling 79–404." Def.'s Cross–Mot. at 31. In rejecting the "re-enactment" argument, the courts found as follows:

> there is no indication that Revenue Ruling 79–404 has been fully brought to the attention of Congress. Neither party cites any reported (or unreported, for that matter) court decision in which Revenue Ruling 79–404 has been litigated and, indeed, this Court's research has not uncovered any. In addition, plaintiff asserts (and defendant does not contest) that the legislative history of subsequent amendments to §§ 4251 and 4252 does not reflect that this particular Ruling or the issue that that Ruling addresses was ever expressly considered by Congress.

*Office Max,* 309 F.Supp.2d at 1004; *Fortis,* 2004 WL 2085528 at *12 ("Ultimately, there is no indication that Revenue Ruling 79–404 was brought to the attention of Congress or that Congress in any subsequent reenactments considered the question involved in that Ruling."); *Reese,* 2004 WL 2901579 at *12. For the reasons described above, as well as those set forth in detail in *Office Max,* 309 F.Supp.2d at 996–1004, *Fortis,* 2004 WL 2085528 at *11–12, and *Reese,* 2004 WL 2901579 at *11–12, the Court finds unpersuasive the fact that in the years since the issuance of Revenue Ruling 79–404, Congress has re-enacted §§ 4251 and 4252 several times.

**D. The Honeywell Service at Issue Did Not Vary By Distance**

**1. Designation of Interstate/Intrastate/International is Not A Measure of Distance and Does Not Alter The Conclusion That Honeywell's Calls Were Not "Toll Telephone Service" Within the Meaning of the Statute**

 Defendant argues that Honeywell's toll telephone service does vary by "distance" because rates may vary depending on whether the call is intrastate, interstate, or international. Def.'s Cross–Mot. at 27–29. Again, this argument has been advanced and rejected by the courts in *Office Max,* 309

F.Supp.2d at 995–96, *Fortis,* 2004 WL 2085528 at *13, and *Reese,* 2004 WL 2901579 at *12–13.

"Section 4252(b)(1) presumes a formula where the charge correlates to both the elapsed time of the call and the distance— that is, the mileage—that the call travels." *Fortis,* 2004 WL 2085528 at *13. "[T]elephone calls are designated according to geopolitical units due to the federalist regulatory scheme and the demarcation of jurisdiction between the Federal Communications Commission and state regulatory agencies." *Id.;* see *Office Max,* 309 F.Supp.2d at 995. "The distinctions between intrastate and interstate do not necessarily correlate to distance because, for example, an intrastate call may well travel a longer distance than certain interstate or even international calls." *Fortis,* 2004 WL 2085528 at *13; see *Office Max,* 309 F.Supp.2d at 996; *Reese,* 2004 WL 2901579 at *12. Based on the foregoing, the courts concluded that "the jurisdictional classifications employed in the long distance service at issue does not amount to service where charges vary in amount with distance and thus do not place the service within § 4252(b)(1)'s definition of toll telephone service." *Fortis,* 2004 WL 2085528 at *13; see *Reese,* 2004 WL 2901579 at *13. For the reasons discussed in *Office Max, Fortis,* and *Reese,* this Court finds likewise.

Based on the above, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied with respect to whether the Honeywell service is "toll telephone service" within the meaning of section 4252(b)(1).

**2. Plaintiff Seeks a Refund Only For Those Services That Were Postalized**

Defendant also claimed that some of the Honeywell service varied by distance. "Plaintiff's contract with MCI included service with toll rates for interstate calls which were based on two mileage bands." Def.'s Br. at 27. "In addition, plaintiff's interstate service with AT & T references mileage bands in stating the toll rates." *Id.* at 28. Plaintiff responded that its claim for refund does not include any claim for the AT & T

service in which toll charges varied by mileage bands. Mem. in Supp. of Honeywell International Inc.'s Resp. to The United States' Cross–Mot. for Summ. J. and Reply to the United States' Resp. to Honeywell International's Mot. for Summ. J. on Liability ("Pl.'s Reply") at 20. Plaintiff further noted that it did not subscribe to the MCI Vision plan referenced by defendant. *Id.* Rather, it subscribed to a different plan, the MCI Vision Power Rate, which was postalized. *Id.;* Pl.'s Ex. 1a, 33. Plaintiff further represented that it deliberately excluded from the instant refund suit taxes remitted on any distance-sensitive service. *Id.* n. 62; Transcript of Proceedings, Honeywell International, Inc. v. United States, 03–1915C at 39–40 (Fed.Cl. December 1, 2004); *see* Pl.'s Ex. 1a.

## IV. Honeywell's Service Does Not Fall Within The Definition of "Toll Telephone Service" Set Forth in Section 4252(b)(2)

■ As in *Office Max, Fortis,* and *Reese,* the Government argues that "plaintiff's long distance service is taxable under section 4252(b)(2) if it is not taxable under section 4252(b)(1)." Def.'s Br. in Supp. of its Cross–Mot. ("Def.'s Br.") at 45. Section 4252(b)(2) involves:

> a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b)(2) (2000). Defendant contends that under the plain meaning of this provision, plaintiff's telephone service is taxable toll service. As support for its assertion, defendant notes that plaintiff pays a monthly bill based on the elapsed transmission time of its calls to various areas specified in the rate tables contained in its contract tariffs with no limit on the number of calls that may be placed. Thus, says defen-

dant, it meets all the elements of section 4252(b)(2) (a "periodic charge," "determined ... upon the basis of total elapsed transmission time," for "an unlimited number" of calls to "a specified area" outside the local service area). Def.'s Br. at 46.

Plaintiff rebuts defendant's argument by stating that its calls are not limited to a particular geographic area—Honeywell can call any location served by the carriers. Second, while Honeywell can make an unlimited number of calls each month, plaintiff is charged on a per call basis for each and every outbound call placed or inbound (toll free) call received. Each call is rounded up to the next highest billing increment and multiplied by a postalized rate to produce a per call charge. Additionally, Honeywell's charges are periodic only in the sense that it receives a monthly bill for the services. That monthly bill, however, is not a flat fee. Rather, it is a computation of the charges incurred the previous month. Pl.'s Br. at 33–34.

In addressing these same arguments, the courts have held:

> Under the plain language of the statute, to constitute "toll telephone service," the service must entitle the subscriber to unlimited calls within a specific geographic area for a periodic charge that is to be determined as a flat amount or upon the basis of total elapsed transmission time. This simply does not describe the long-distance service at issue in the instant case. The terms of the service herein do not entitle plaintiff to "unlimited calls" within "a specified geographic area;" rather, plaintiff must pay for each and every call and may call (and receive calls from) any location where [the carrier] provides service. Moreover, the charge at issue is not determined as a "flat amount" or "upon the basis of total elapsed transmission time." Instead, plaintiff is charged an agreed-upon rate that varies in amount depending on the duration of the individual call and the number of calls. Based on the above, the Court finds that the long-distance service at issue herein does not fall within the definition of "toll telephone service" set forth in § 4252(b)(2).

*Office Max,* 309 F.Supp.2d at 1006–07; *see also Fortis,* 2004 WL 2085528 at *13–14; *Reese,* 2004 WL 2901579 at *13–14.

For the reasons set forth by the courts in *Fortis, Office Max,* and *Reese,* and argued by plaintiff in the case at bar, we find that plaintiff's long-distance service is not taxable under section 4252(b)(2). Accordingly, plaintiff's motion is granted and defendant's cross-motion is denied with respect to whether the Honeywell service was "toll telephone service" as defined in section 4252(b)(2).

## V. Honeywell's Calls Do Not Fall Within the Plain Meaning of Section 4252(a)

Defendant, true to form, lastly argues, in the alternative, that if Honeywell's service does not meet either definition of toll telephone service in section 4252(b), then it must be considered "local service" under section 4252(a), set forth *supra* at Background, Part II.B. Def.'s Br. at 48–50. Defendant asserts that Congress demonstrated an intent to tax all telephone service with limited exceptions and that "all telephone service must be encompassed by either section 4525(a), 4252(b) or 4252(d)." *Id.* Defendant further asserts that plaintiff's service "meets the literal definition of local service." *Id.*

Faced with these same arguments, the *Fortis* court found that "[t]he Government's argument is without merit. It is hardly a plain or natural reading of the statute to claim that the entire United States is part of one 'local telephone system.'" *Fortis,* 2004 WL 2085528 at *15. Similarly, the *Office Max* court found that "[d]efendant's argument is entirely unpersuasive. There is absolutely no basis upon which to find that the long-distance service at issue herein falls within the statutory definition of 'local telephone service.'" 309 F.Supp.2d at 1007. Likewise, both courts, as well as the *Reese* court, were unpersuaded by defendant's argument plaintiff's services must fall within section 4252(a) by default. *Reese,* 2004 WL 2901579 at *15; *Office Max,* 309 F.Supp.2d at 1007; *Fortis,* 2004 WL 2085528 at *15. We agree with the findings of *Reese, Office Max,* and *Fortis* on this issue and likewise conclude, based on plaintiff's arguments and the reasoning in those cases, that Honey-well's service is not taxable under section 4252(a). Thus, plaintiff's motion is granted and defendant's cross-motion is denied with respect to whether the Honeywell service was "local telephone service" as defined in section 4252(a).

## *CONCLUSION*

For the reasons set forth above, plaintiff's motion for summary judgment is GRANTED and defendant's cross-motion for summary judgment is DENIED. The parties shall contact chambers within ten days to schedule a status conference to determine the course of further proceedings in this case.

IT IS SO ORDERED.

